866 F.2d 33
 Orin LEHMAN, as Commissioner of the New York State Office of
Parks, Recreation and Historic Preservation, and The New
York State Office of Parks, Recreation and Historic
Preservation, Plaintiffs-Appellees,
v.
James H. BURNLEY*, as Secretary of the United
States Department of Transportation, Defendant-Appellant.
No. 447, Docket 88-6020.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 15, 1988.
Decided Jan. 13, 1989.
 
 Gabriel W. Gorenstein, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., Amy Rothstein, Nancy Kilson, Asst. U.S. Attys., S.D.N.Y., New York City, of counsel), for appellant.
 Laurel W. Eisner, Asst. Atty. Gen., State of N.Y., New York City (Robert Abrams, Atty. Gen., State of N.Y., Judith T. Kramer, Asst. Atty. Gen., State of N.Y., New York City, of counsel), for appellees.
 Before FEINBERG, Chief Judge, MESKILL and KEARSE, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 This is an appeal from a December 11, 1987 judgment of the United States District Court for the Southern District of New York, Owen, J., which granted summary judgment to plaintiffs-appellees the New York State Office of Parks, Recreation and Historic Preservation and its Commissioner, Orin Lehman ("the appellees" or "New York") and denied summary judgment to defendant-appellant Elizabeth Hanford Dole as Secretary of the United States Department of Transportation (the Secretary).
 
 
 2
 New York brought suit under the Administrative Procedure Act, 5 U.S.C. Sec. 702 (1982 & Supp.IV 1986), to challenge the Secretary's new interpretation of the Recreational Boating Safety Act, 46 U.S.C. Secs. 13101-13110 (Supp.III 1985); Pub.L. No. 99-626, 100 Stat. 3504 (1986) (the Act). The Secretary's interpretation stated that expenditures by local governments could not be included in determining the amount of federal matching grant funds that states were entitled to receive under section 13103(a) of the Act. The Secretary also held that the new interpretation was to be applied retroactively. In a memorandum and order filed October 14, 1987, the district court reversed the Secretary's interpretation and concluded that the term "State amounts expended" in section 13103(a) was intended to include local expenditures. J.App. 860, 864. The district court subsequently granted summary judgment to New York in a judgment filed on December 11, 1987.
 
 
 3
 We now reverse the district court's decision and hold that the Secretary's determination that under the Act the expenditures of local governments are not to be included in "State amounts expended" was not unreasonable, arbitrary or capricious. However, we hold that the rule should be applied prospectively only.
 
 BACKGROUND
 
 4
 The Recreational Boating Safety Act was enacted "[t]o encourage greater State participation and uniformity in boating safety efforts, and particularly to permit the States to assume the greater share of boating safety education, assistance, and enforcement activities." 46 U.S.C. Sec. 13101(a). The United States Coast Guard oversees the state recreational boating safety programs pursuant to a delegation of the Secretary's authority. 49 C.F.R. Sec. 1.46(n)(1) (1987). Through a three-part formula set forth in section 13103 of the Act, federal money is allocated to the states to assist them in developing, carrying out and financing their programs. The third part of that formula is the basis of the dispute here. That section provides:
 
 
 5
 (3) One-third shall be allocated so that the amount allocated each fiscal year to each eligible State will be in the same ratio as the amount of State amounts expended or obligated by the State for the State recreational boating safety program during the prior fiscal year bears to the total State amounts expended or obligated during that fiscal year by all eligible States for State recreational boating safety programs.
 
 
 6
 46 U.S.C. Sec. 13103(a)(3).
 
 
 7
 In 1983, New York participated in the federal boating safety program and applied for and received federal funds to match the amount of state and local government expenditures for the previous fiscal year. In October of 1983 at a conference of the National Association of State Boating Law Administrators (NASBLA), a Coast Guard representative announced that the Coast Guard interpreted the Act to disqualify local expenditures from inclusion in allowable state expenditures under section 13103(a)(3). J.App. at 299-300. In response to New York's request for clarification, the Coast Guard reversed its position and stated that local expenditures were allowable state expenditures. Id. at 395.
 
 
 8
 New York, along with other participating states, received a letter dated January 20, 1984 from the Chief, Coast Guard Office of Boating, Public, and Consumer Affairs which stated that local expenditures could be included in the allocation calculations. Id. at 401. New York then submitted an application for matching funds for the fiscal year 1984, seeking federal money for both state and local expenditures. In reliance on the position that local expenditures were includable, New York entered into contracts with several localities in which it agreed to reimburse them for the costs of their safe boating programs.
 
 
 9
 In May of 1984, the Coast Guard reversed itself again and stated that local expenditures were not reimbursable. The Coast Guard opined that the word "State" in section 13103 meant that only state government expenditures were allowable. Id. at 758-59. The Coast Guard applied the policy retroactively for the fiscal year 1984. New York's grant for fiscal year 1984 was reduced from approximately $703,000 to $257,000. See id. at 759, 761. New York appealed the Coast Guard's decision to the Secretary.
 
 
 10
 The Secretary denied the appeal on March 19, 1985, upholding the Coast Guard's ruling that local expenditures were not includable in section 13103(a)(3) allocations. The increased administrative burdens and delays that would result from including local government expenditures were cited as reasons for the disallowance of localities' outlays. Id. at 797. The Secretary also supported the Coast Guard's decision not to seek public input through publication of a notice of the proposed change in the Federal Register, stating that this would cause a delay in the allocation of funds. Id.
 
 
 11
 New York then filed a complaint seeking judicial review of the Secretary's decision. The district court granted summary judgment to New York, stating that the Secretary's determination bore "none of the hallmarks of a legislative rule," and was not binding on the court. Id. at 861. The court also held that no special deference was due the Secretary's interpretation. Id. at 862. In concluding that "State amounts expended" was meant to include local expenditures, the district court opined that "[t]he Secretary's determination to the contrary is neither reasonable nor rational." Id. at 864.
 
 
 12
 We reverse the district court's decision. However, we hold that the new interpretation should be applied prospectively only.
 
 DISCUSSION
 
 13
 A. The Secretary's Interpretation of Section 13103(a)(3)
 
 
 14
 An interpretation by the Secretary should not be reversed unless that interpretation is unreasonable, or the Secretary has acted in an arbitrary and capricious manner. See Pappas v. Bowen, 863 F.2d 227, 230 (2d Cir.1988); New York Council, Association of Civilian Technicians v. Federal Labor Relations Authority, 757 F.2d 502, 508 (2d Cir.), cert. denied, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985). In the instant case, the Secretary's most recent interpretation is reasonable, based on the plain meaning of "State" as it appears other places in the Act and the common use of the word "State." In reaching the interpretation, the Secretary did not act in an arbitrary and capricious manner.
 
 
 15
 "[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). There is no indication of congressional intent on what should be included in "State amounts expended," and no definition of "State" appears in the Act itself. However, the Act is part of Title 46 of the United States Code which governs shipping. Therefore, the general definitions found in that Title are applicable to the Act. The definition of state found in 46 U.S.C. Sec. 2101(36) (Supp.III 1985) reads: "(36) 'State' means a State of the United States, Guam, Puerto Rico, the Virgin Islands, American Samoa, the District of Columbia, the Northern Mariana Islands, and any other territory or possession of the United States." This is the common meaning of "State" and also reflects how it is used consistently throughout the Act. See, e.g., sections 13101(a) and 13102(a) (which direct the Secretary to make contracts with, and allocate and distribute amounts to, eligible states); section 13103(a) (which directs the Secretary to make allocations to states); and sections 13105(a) and 13108(a) (which direct states to make the necessary computations for allocations).
 
 
 16
 Local governments are mentioned only once in the Act, in section 13109(a), which states that the Secretary can consult with local governments in carrying out the responsibilities under the chapter. This single mention of local governments is telling. It indicates that when Congress desired to refer to and include local governments, it knew how to do so. From this, it follows that if Congress had intended that the expenditures of local governments should be included in "State amounts expended" in section 13103(a)(3), it could have so provided. See Consumer Product Safety Commission, 447 U.S. at 109, 100 S.Ct. at 2056.
 
 
 17
 As indicated in section 13101(a), Congress' objective was to increase state participation in boating safety efforts. It chose language that may be read to include only state expended funds in its allocation formula. The Secretary has made a determination that the best way to achieve Congress' goal is through allocating the funds only to state governments. This determination is entitled to deference. The Supreme Court has noted that "[w]hen a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 866, 104 S.Ct. 2778, 2793, 81 L.Ed.2d 694 (1984). Here, New York is in effect challenging the soundness of the decision to exclude local expenditures. As noted above, the Secretary's policy is a reasonable one, and thus should be upheld.
 
 
 18
 New York argues that the Secretary's decision "was not the product of thorough research or careful consideration." Br. for Appellees at 30. The record indicates that while input on the proposed change in policy was not solicited from the public via publication in the Federal Register, there was a considerable amount of input from NASBLA and several states, as well as a fair amount of intra-agency discussion before the decision to exclude local expenditures was made. See J.App. at 388-95, 430, 433-34, 448-49. As the facts indicate, the Secretary, acting through the Coast Guard, had reversed her position on the interpretation of section 13103(a)(3) twice before reaching the final decision that local expenditures were not includable. When an agency changes its interpretation of a statute, a reviewing court must determine whether the change was "accompanied by a reasoned explanation of why the new rule effectuates the statute as well as or better than the old rule." New York Council, Association of Civilian Technicians, 757 F.2d at 508 (citing Office of Communication of United Church of Christ v. FCC, 560 F.2d 529, 532 (2d Cir.1977)). Here, the Secretary cited the increased administrative burdens and delays that including local government expenditures would cause.
 
 
 19
 Thus, the Secretary gave her reasons for the change in position. Her decision was not reached in an arbitrary and capricious manner and should be upheld.
 
 B. Retroactive Application of the New Rule
 
 20
 When the new interpretation of "State amounts expended" was reached, the interpretation was applied retroactively. Consequently, New York's allocation for fiscal year 1984 was drastically reduced. For a number of reasons, the retroactive application of the ruling was improper.
 
 
 21
 "Retroactivity is not favored in the law.... Even where some substantial justification for retroactive [application of an agency ruling] is presented, courts should be reluctant to find such authority [to apply rulings retroactively] absent an express statutory grant." Bowen v. Georgetown University Hospital, --- U.S. ----, ----, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). There are five factors that courts take into account when evaluating the retroactive application of an agency ruling. Those factors are:
 
 
 22
 (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.
 
 
 23
 New York Telephone Co. v. Federal Communications Commission, 631 F.2d 1059, 1068 (2d Cir.1980) (quoting Retail, Wholesale and Department Store Union v. National Labor Relations Board, 466 F.2d 380, 390 (D.C.Cir.1972)).
 
 
 24
 Applying these factors to the case at hand, we find that the Secretary's decision on retroactivity was improper. This is the first time that we have interpreted the meaning of "State" in this Act, thus it is technically a case of first impression. As noted above, there is no clear indication of congressional intent on what should be included in "State amounts expended." There had been considerable equivocation on the proper interpretation before the last decision was reached. Although the previous interpretation was not well established, the decision constituted a departure from prior practice upon which New York had based several programming decisions. The Supreme Court has noted that "an administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests." Heckler v. Community Health Services, 467 U.S. 51, 60 n. 12, 104 S.Ct. 2218, 2224 n. 12, 81 L.Ed.2d 42 (1984). Here, New York relied to its detriment on the former rule by entering into contracts with localities, and the localities had made expenditures in reliance on being reimbursed by the federal government. There was a substantial burden incurred by New York in that it had to withdraw from some programs and cut other proposed programs. J.App. at 770-71. It also had to recoup losses it suffered as a result of the departure from previous policy. The Secretary articulated no statutory interest that would be served by applying the rule retroactively. The purposes of the Act are not furthered by the retroactive application of the rule. For the foregoing reasons, the Secretary should be estopped from applying the rule retroactively.
 
 CONCLUSION
 
 25
 We reverse the judgment of the district court and remand to the district court for an order that the Secretary's new interpretation be applied prospectively only.
 
 
 
 *
 James H. Burnley is substituted for defendant Elizabeth Hanford Dole pursuant to Fed.R.App.P. 43(c)(1)