Charles E. STOUT, Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORP., Defendant.

No. 91 Civ. 4983 (GLG).

United States District Court, S.D. New York.

July 16, 1992.

Seward & Kissel (Anthony R. Mansfield, Tracy E. Schaefer, of counsel), New York City, for defendant.

Alan J. Reinach, White Plains, N.Y., for plaintiff.

## OPINION

GOETTEL, District Judge.

After a prolonged battle between Democrats in Congress and the White House, a legislative armistice entitled the Civil Rights Act of 1991 was finally hammered out and signed by the President. Since its enactment, the Act has been the eye of a storm driven by political impasse and conflicting precedent whose judicial winds have reached gale force. Those winds have now swept this court into the controversy surrounding the 1991 Act.

## I. FACTUAL BACKGROUND

Plaintiff Charles E. Stout was an employee of International Business Machines Corporation ("IBM") for some nineteen years. He began working in manufacturing assembly but, after two back operations in 1985–86 left him unable to move with his department to IBM's Kingston office, ended up working in Poughkeepsie in another manufacturing position that required little or no physically demanding work. After two years in this position, plaintiff was terminated.

According to plaintiff, his supervisor complained to him on several occasions that plaintiff was earning too much money considering his restricted work capacity due to his physical limitations. Plaintiff states that many of the employees in his department are "temps" on hourly pay with few or no benefits. Consequently, plaintiff, a full-time employee with nineteen years of experience at IBM and full benefits, earned substantially more than most if not all other employees in the department.

Oddly enough, the events leading up to plaintiff's discharge revolve around a dentist's appointment. On October 6, 1988, plaintiff informed his supervisor, Mr. Cooper, that he would be taking a personal leave the following day to keep a dentist appointment. The next day, before plaintiff left for his appointment, Cooper challenged plaintiff's assertion that he was actually going to the dentist. When plaintiff called the dentist's office, he was told that his appointment had been cancelled by his wife. Upon plaintiff's request, the receptionist agreed to reschedule the appointment for its original time that same day.

On October 8, 1988, plaintiff was discharged for falsification of time records, records which stated that plaintiff was taking personal leave at 12:45 pm. After his termination, plaintiff offered his supervisor a letter from his dentist attesting to the fact that plaintiff visited the dentist's office for his scheduled appointment.

Plaintiff, who is black and fifty years of age, filed a complaint with the New York State Division of Human Rights ("DHR") alleging that he was discharged by his supervisor on account of his race, age, and disabilities. His claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§ 621 *et seq.*, were referred to the EEOC. In April 1990, the DHR issued a Determination and Order After Investigation finding no probable cause for plaintiff's discrimination claims under the New York Human Rights Law. On June 26, 1991, the EEOC concluded that the evidence did not support plaintiff's claims of Title VII or ADEA violations. Upon dismissing plaintiff's complaint, the EEOC issued a Notice of Right to Sue Letter.

In August 1991, plaintiff commenced suit in federal court by filing a *pro se* complaint alleging an unlawful discharge under Title VII on the basis of his race and the ADEA because of his age. Plaintiff later retained counsel who was granted leave to file an amended complaint that added claims under § 1981 and the New York Human Rights Law. Plaintiff is seeking damages in excess of $12 million plus reinstatement to his former position and recoupment of back pay and lost pension benefits.

Before the court is defendant's motion to dismiss the additional causes of action sought in plaintiff's amended complaint pursuant to Fed.R.Civ.P. Rule 12(b)(6) for failure to state a claim upon which relief may be granted and Rule 12(b)(1) for lack of subject matter jurisdiction. Defendant also seeks to strike plaintiff's demands for compensatory and punitive damages and a jury trial also included in plaintiff's amended complaint.

## II. DISCUSSION

The court can only dismiss plaintiff's claims under 42 U.S.C. § 1981 where "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Branum v. Clark,* 927 F.2d 698 (2nd Cir.1991). Where a complaint alleges civil rights violations, we exercise even greater care in making this assessment.

Plaintiff's amended complaint includes a claim that defendant has violated § 1981 by its discriminatory termination of plaintiff. In his amended complaint, plaintiff also demands a jury trial and seeks compensatory and punitive damages. At the very least, the parties recognize that plaintiff's claims in his amended complaint under § 1981, his requests under Title VII for compensatory and punitive damages and his demand for a jury trial all rise or fall on one crucial but hotly disputed issue, the retroactivity of the Civil Rights Act of 1991. If the Act applies prospectively only, plaintiff's § 1981 claim, his damages requests, and demand for jury trial must be dismissed since the action was filed before the Act was enacted.

At present there is a clear split of authority among the district courts of this circuit over the retroactivity of the 1991 Act. *Compare, e.g., Smith v. Petra Cablevision Corp.,* 793 F.Supp. 417 (E.D.N.Y. 1992) (finding no retroactivity) *and McLaughlin v. New York,* 784 F.Supp. 961 (N.D.N.Y.1992) (similarly) *with Jackson v. Bankers Trust Co.,* No. 88 Civ. 4786, 1992 WL 111105, 1992 U.S.Dist. LEXIS 6290 (S.D.N.Y. May 4, 1992) (applying the Act retroactively) *and Croce v. V.I.P. Real Estate, Inc.,* 786 F.Supp. 1141 (E.D.N.Y.1992) (similarly). This circuit's conflict simply mirrors the general discord among the federal courts regarding the Act's retroactivity.[1]

Before the enactment of the 1991 Civil Rights Act, the Supreme Court, in a decision of enormous impact, held that "[s]ection 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." *Patterson v. McLean Credit Union,* 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989) [hereinafter *"Patterson"*].

In the wake of *Patterson,* courts in this circuit held that discrimination claims based upon employment termination did not fall within § 1981's ambit. *See, e.g.,*

---

**1.** For a detailed listing of district court cases decided through April 1992 which have considered the retroactivity of the 1991 Act, see *Fray v.*

*Omaha World Herald Co.,* 960 F.2d 1370, 1383 Appendix (8th Cir.1992).

*Patterson v. Intercoast Management of Hartford,* 918 F.2d 12, 14 (2d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991). Consequently, if *Patterson* governs, plaintiff's § 1981 claim would require dismissal.

This line of decisions, however, was interrupted on November 21, 1991 when President Bush signed into law the Civil Rights Act of 1991, Pub.Law No. 102–166, 105 Stat. 1071 (1991) (the "1991 Act"). The 1991 Act, a product of intense political maneuvering, was adopted, at least in part, to reverse a string of Supreme Court decisions regarding the protections afforded by the various Civil Rights statutes.[2]

The 1991 Act made three significant changes which impacted this case during its pendency. First, section 101 of the Act explicitly overruled the *Patterson* decision. As mentioned earlier, the Supreme Court had interpreted § 1981's application to the making and enforcement of contracts to exclude claims founded upon discriminatory terminations. The 1991 Act states:

> For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(b). The Act also makes clear that its provisions apply to nongovernmental incidents of discrimination in addition to those occurring under color of state law. *See* 42 U.S.C. § 1981(c).

The second profound change brought about by the 1991 Act was broadening of the damages available to victims of employment discrimination. Section 102 of the Act allows a party complaining of unlawful intentional discrimination under 42 U.S.C. § 2000e–5 to recover compensatory and punitive damages if the complaining party cannot recover under § 1981. Pub.Law No. 102–166 § 102. Lastly, § 102(c) of the Act states that a complaining party who

seeks compensatory or punitive damages may demand a jury trial.

In his amended complaint, plaintiff added a § 1981 claim, claims for compensatory and punitive damages, and demanded a jury trial. Defendant has moved to dismiss arguing that the 1991 Act has no retroactive application to plaintiff's pending case. Thus, however unwillingly, we must step into the breach and decide whether the 1991 Act's provisions should be applied retroactively to cases pending at the time of the Act's enactment that involved conduct occurring before its passage.

Unfortunately, the issue of retroactivity has been the victim of an irreconcilable conflict in Supreme Court authority, a divergence of precedent that has helped produce a split among courts on the question of the 1991 Act's retroactivity. The sides are roughly evenly divided at this point. *See* cases cited *infra* p. 4 and note 1.

In *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Court held that "a court is to apply the law in effect at the time it renders its decision." *Bradley,* 416 U.S. at 712, 94 S.Ct. at 2016. The Court, however, carved out two exceptions to the general rule of retroactivity, where retroactive application of the law would produce "manifest injustice" to a party or where congressional intent clearly mandated prospective application only. *Id.* at 713, 94 S.Ct. at 2017.

More recently, the Supreme Court has spoken on retroactivity in a contrary manner. In *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court announced that "retroactivity is not favored in the law ... Congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* 488 U.S. at 208, 109 S.Ct. at 471.

The Court reiterated this pronouncement in *Kaiser Aluminum & Chemical Corp. v.*

---

**2.** The 1991 Act overturns or modifies eight relatively recent decisions by the Supreme Court with the general effect of returning the law to the state at which it stood prior to these decisions. *See Smith v. Petra Cablevision Corp.,* 793 F.Supp. 417 (listing the overturned and modified Supreme Court cases).

*Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990). In *Kaiser,* however, the Court declined to harmonize the "apparent tension" between the two lines of retroactivity cases holding instead that under both "where congressional intent is clear, it governs." *Id.* Congressional intent then is the starting point of our discussion.

### A. The Language of the 1991 Act

As the Supreme Court has said, "the starting point for interpretation of a statute 'is the language of the statute itself.'" *Kaiser,* 494 U.S. at 835, 110 S.Ct. at 1575 (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). We thus begin our examination of the 1991 Act's retroactivity at its source, the language of the Act. The Act states quite explicitly that "except as otherwise specifically provided, this Act and the amendments made by the Act shall take effect upon enactment." Pub.Law No. 102–166 § 402(a). The Act then goes on to foreclose retroactivity in two situations, cases involving discrimination by American companies against Americans living abroad, *see* Pub.Law No. 102–166 § 109(c), and certain disparate impact cases. *See* Pub.Law No. 102–166 § 402(b).

The inclusion of language explicitly prohibiting retroactivity in two provisions would seem to imply, in order to avoid redundancy, the general retroactivity of the Act. *See Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302, 1304 (N.D.Cal.1992). Other courts, however, while disagreeing over the Act's retroactivity, have viewed the statute as facially unclear. *Compare Mojica v. Gannett Co., Inc.,* 779 F.Supp. 94 (N.D.Ill.1991) (finding the Act's language and legislative history unclear but applying the Act retroactively) *with Tyree v. Riley,* 783 F.Supp. 877 (D.N.J.1992) (finding the language and legislative history unclear but applying the Act prospectively).

At least one court has concluded that Congress, while unable politically to settle the general issue of the Act's retroactivity, sought to guard against further litigation over the decision in *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), concerning the legal standards in disparate impact cases. *See Petra Cablevision,* 793 F.Supp. at 421.

The words "shall take effect upon enactment" included in § 402(a) of the Act have themselves been the subject of varying interpretations. Without doubt, courts have drawn conflicting interpretations from this language, some viewing it as supporting retroactivity, others reading it to limit its application to cases commenced after enactment, and still others stating that it may be plausibly interpreted as simply stating that the Act becomes law upon enactment. *Compare Van Meter v. Barr,* 778 F.Supp. 83 (D.D.C.1991) (finding support for prospective application from the language of § 102(a) of the 1991 Act) *with Petra Cablevision,* 793 F.Supp. at 421 (finding it plausible to read this language to mean that the Act becomes effective upon enactment).

We agree that the language of the 1991 Act is ambiguous and offers no firm indication of Congress' intent. There is no doubt that had the political will existed, Congress could have drafted the 1991 Act to clearly state its desire to apply the Act retroactively. Indeed, in the Civil Rights Act of 1990 vetoed by President Bush Congress had included a provision specifically clothing the Act with retroactive effect. In his veto message, the President mentioned "unfair retroactivity rules" as one of the bill's features that should be eliminated. *See Doe v. Bd. of County Commissioners,* 783 F.Supp. 1379, 1383 (S.D.Fla.1992) (citing President's Message to the Senate Returning Without Approval the Civil Rights Act of 1990, 26 Weekly Comp.Pres.Doc. 1632, 1634 (Oct. 22, 1990)).

It is not clear, however, that any and all retroactive effect was unacceptable to the President; his objections might be limited to occasions of pre-Act conduct where no legal actions had been commenced before enactment. Add to the confusion the fact that Congress' Democratic members refused to adopt a version of the 1990 bill that specifically limited its application to

prospective cases. *See Kennedy v. Fritsch,* 796 F.Supp. 306 (N.D.Ill.1992) (citing *Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929, 933 n. 3 (7th Cir.1992)).

The net effect of this slice of legislative history is that Congress' clear statement of retroactivity, present in the vetoed 1990 Act, was deleted from the 1991 version of the Civil Rights Act. Congress did not drop the retroactivity ball so much as it consciously "punted on the question of whether or not the Act applies retroactively." *King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala.1991).

B. The Legislative History of the 1991 Act

In the 1991 Act's legislative history, Congress was singularly unhelpful in resolving the controversy over the Act's retroactivity that had plagued the short, unhappy life of its predecessor. While the 1991 Act, a product of the continued war of attrition between Congress and the President, speaks ambiguously on the question of retroactivity, the pronouncements of individual members of Congress, anything but ambiguous, are hopelessly disharmonious.

Indeed, the legislative history Act represents a bit of historical revisionism by Congressional leaders. Each of the key Congressional figures involved in the 1991 Act's passage obviously spoke during the floor debates with the intention of influencing the legal debates envisioned, indeed necessitated, by Congress' ultimate agreement to disagree about the Act's retroactivity. Senator Danforth (R–Mis.), one of the Act's principal Republican sponsors, stated in an interpretive memorandum:

My review of the Supreme Court case law supports my reading that in the absence of an explicit provision to the contrary, no new legislation is applied retroactively. Rather, new statutes are to be given prospective application only, unless Congress explicitly provides otherwise, which we have not done in this instance … Subsection 22(b), regarding certain disparate impact cases, is intended only to provide additional assurance that the provisions of the bill will not be applied to certain cases which fit the provision of that subsection. It should not be read in derogation of the sponsors' intention not to provide for retroactive effect or application as expressed in subsection 22(a) of the bill.

137 Cong.Rec. § 15,483 (daily ed. Oct. 30, 1991). These remarks, generally representative of the viewpoint on the Republican side of the aisle, support the prospective application of the 1991 Act. However, when matched against remarks from the Democratic side of the Congressional aisle, little weight can be drawn from the legislative history. Senator Kennedy (D–Mass.), for example, the Act's principal Democratic sponsor, voiced his complete agreement with Sen. Danforth's interpretive memorandum with one exception, the retroactivity of the Act. During one session, after noting that the issue would ultimately be decided by the courts, Senator Kennedy stated that:

Many of the provisions of the Civil Rights Act of 1991 are intended to correct erroneous Supreme Court decisions and to restore the law to where it was prior to those decisions. In my view, these restorations apply to pending cases, which is why the supporters of the Murkowski amendment sought specific language to prevent the restoration from applying to that particular case.

137 Cong.Rec. § 15,963 (daily ed. Nov. 5, 1991). The Democrats in Congress basically lined up behind this position. For our purposes, the result is clear: no clear congressional intent can be divined from the partisan split in Congress represented by the conflicting statements of the Act's sponsors. All that can be said with certainty is that given the sharp political divisions, Congress agreed to disagree as to whether the 1991 Act would apply to cases pending at enactment, fully expecting the courts to settle the issue it was unable to resolve.

Congress' deliberate muddying of the legal waters is largely responsible for the ongoing dispute among the federal courts as to the Act's retroactivity, an issue that

must ultimately await resolution by the Supreme Court.

### C. The EEOC's Policy Statement

Defendant IBM argues that despite a somewhat unclear legislative history, the court should give deference to the interpretation of the 1991 Act by the Equal Employment Opportunity Commission ("EEOC") set forth in a policy statement dated December 27, 1991. In it, the EEOC indicated that it would "not seek damages under the Civil Rights Act of 1991 for events occurring before November 21, 1991." E.E.O.C. Notice No. 915.002 (Dec. 27, 1991).

We do not find the EEOC's issuance of a policy statement regarding the Act to be determinative or entitled to any special deference. Where an agency is not empowered to promulgate its own regulations, courts may accord less weight to the agency's interpretation of a statute. *General Electric Co. v. Gilbert*, 429 U.S. 125, 140–43, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976). Indeed, the Supreme Court has invoked this idea in its refusal to defer to the EEOC's construction of Title VII. *See, e.g., EEOC v. Arabian American Oil Co.,* — U.S. ——, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991). Moreover, as other courts have noted, the EEOC, as only one of many actors in the field, does not possess any exclusive or special expertise in civil rights meriting greater deference. *See, e.g., Petra Cablevision,* 793 F.Supp. at 425; *U.S. v. Dept. of Mental Health,* 785 F.Supp. 846 (E.D.Cal.1992). The deference to which the EEOC's position is entitled thus rests more generally upon the persuasiveness of its reasoning.

As other courts have noted, the EEOC's position was based upon its conclusions regarding the language of the statute, the legislative history of the Act, and an examination of judicial decisions, in short the same sort of statutory analysis courts regularly engage in. Unlike the EEOC, we do not find either the Act's language or its legislative history especially instructive, let alone decisive.

### D. Legal Presumptions of Retroactivity

Given the 1991 Act's ambiguous language and its cloudy legislative history, we must fall back upon legal presumptions to determine whether the Act should be applied retroactively.

As we noted earlier, the *Bradley* line of cases supports retroactive application of statutes unless there is clear congressional intent to the contrary or if manifest injustice would result. *See Bradley,* 416 U.S. at 713, 94 S.Ct. at 2017. As we have said, Congress' intent does not clearly argue against retroactivity. Moreover, one might argue that no injustice would arise given that the alleged discriminatory conduct was already prohibited by Title VII before the 1991 Act's enactment even if § 1981 was unavailing under *Patterson.* Thus, *Bradley* might arguably support retroactive application of the 1991 Act.

Under *Bowen,* however, retroactivity is disfavored and will not be recognized unless a statute's language requires it. *See Bowen,* 488 U.S. at 207, 109 S.Ct. at 471. Here, since the language is ambiguous, *Bowen* would necessitate refusing to apply the 1991 Act retroactively. The Supreme Court in *Kaiser* did not reconcile these cases or choose between their contradictory presumptions but rather found that congressional intent, when clearly expressed as it was, governed under either case. *See Kaiser,* 494 U.S. at 837, 110 S.Ct. at 1577.

Although not resolving the conflict between *Bradley* and *Bowen,* at least five other circuits have held that the 1991 Act does not apply retroactively to conduct occurring before the Act's effective date. *See Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363 (5th Cir.1992) (finding that the Act affected substantive rights); *Luddington v. Indiana Bell Telephone Co.,* 966 F.2d 225 (7th Cir.1992) (rejecting retroactivity as unduly difficult to apply); *Mozee,* 963 F.2d 929 (applying both the substantive and procedural provisions prospectively); *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992) (finding the legislative history of the Act controlling); *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.1992) (finding retroactive application of the Act

would affect substantive rights and liabilities).

To date however, the Second Circuit has given little guidance as to which line of cases should govern the retroactivity issue. *See Youssef v. Rosenblatt & Son, Inc.*, No. 91 Civ. 5063, 1992 WL 116633 at *5, 1992 U.S.Dist. LEXIS 6692 at *16–17 (S.D.N.Y. May 18, 1992) (citing *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1048 (2d Cir. 1992) and *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1182 (2d Cir.1992)).[3]

Here, we are compelled to navigate through the Scylla and Charybdis of Supreme Court cases on retroactivity which Justice Scalia in his concurring opinion in *Kaiser* described as "in irreconcilable contradiction." *See Kaiser*, 494 U.S. at 841, 110 S.Ct. at 1579.[4]

Certain courts have attempted to reconcile *Bradley* and *Bowen* by examining the nature of the statutory changes made by the 1991 Act. The Supreme Court has stated that the *Bradley* rule favoring retroactivity is limited by "another venerable rule of statutory interpretation, *i.e.*, that statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *Bennett v. New Jersey*, 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985). The crucial question then is whether or not the 1991 Act's changes are substantive or simply procedural.

The Ninth Circuit has resolved the tension between *Bradley* and *Bowen* in similar fashion by applying the presumption favoring retroactivity "when a statute is addressed to remedies and procedures and does not otherwise alter substantive

rights." *Friel v. Cessna Aircraft Co.*, 751 F.2d 1037, 1039 (9th Cir.1985).

Two courts in this circuit have concluded that adding compensatory and punitive damages and the right to a jury trial did not alter existing substantive rights. *See Jackson*, 1992 WL 111105 at *6, 1992 U.S.Dist. LEXIS 6290 at *18–19; *Croce*, 786 F.Supp. at 1148–49 ("The prospect of a defendant facing a jury trial in lieu of a bench trial, or potential compensatory damages where none previously existed, simply does not impact on 'existing rights' ").

In particular, the *Jackson* court stressed that the changes wrought by the 1991 Act:

do not introduce the assertion of a new substantive cause of action; plaintiff only seeks additional remedies for an existing cause of action. Thus, none of these claims infringe upon any pre-existing, substantive rights of the defendant. The defendant in this case did not have a vested right to a non-jury trial. Nor can it be said that at the time the defendant engaged in the alleged illegal discrimination, it had a vested right to limit its liability.

*Jackson*, 1992 WL 111105 at *5, 1992 U.S.Dist. LEXIS 6290 at *18; *see also Mojica*, 779 F.Supp. at 98 ("The increased potential for damages, however, is not likely to have affected the conduct of the parties in committing any acts of discrimination that may have occurred."); *Sussman v. Saxon*, 792 F.Supp. 1278 (M.D.Fla.1992) (finding compensatory damages and a jury trial remedial in nature and applying the Act retroactively).

---

3. The Second Circuit recently applied *Bradley* in a criminal case in *United States v. Colon*, 961 F.2d 41, 45 (2d Cir.1992). However, it has also relied upon *Bowen* in holding that the Secretary of Transportation was estopped from applying an administrative rule retroactively. *See Lehman v. Burnley*, 866 F.2d 33, 37 (2d Cir.1989). In *Lehman*, the Second Circuit restated the commonly quoted line that "retroactivity is not favored in the law." *Id.*

4. In his concurring opinion, Justice Scalia stated that, "In the rules of construction that they announce, if not in the results they produce, these two lines of cases are not merely, as the

Court confesses, in 'apparent tension,'; they are in irreconcilable contradiction, and have spawned Courts of Appeals opinions to match." *Kaiser*, 494 U.S. at 841, 110 S.Ct. at 1579 (citation omitted). In an oft-cited opinion, Justice Scalia advocated admitting that the presumption favoring retroactivity expressed in *Bradley* was incorrect and against the rule "applied, except for these last two decades of confusion, since the beginning of the Republic and indeed since the early days of common law: absent specific indication to the contrary, the operation of nonpenal legislation is prospective only." *Id.* (citing cases).

Not all courts, however, share this viewpoint. The Seventh Circuit in *Luddington* noted that changes in remedies, procedures, and evidence "can have as profound an impact on behavior outside the courtroom as avowedly substantive changes." *Luddington*, 966 F.2d at 229. The court went on to say that:

> [t]he amount of care that individuals and firms take to avoid subjecting themselves to liability whether civil or criminal is a function of the severity of the sanction, and when the severity is increased they are entitled to an opportunity to readjust their level of care in light of the new environment created by the change. That is the philosophy ... behind the interpretive principle that presumes that a new civil statute applies only to conduct that occurs after its effective date.

*Id.* at 229. Other courts have voiced similar positions. *See, e.g., Kennedy v. Fritsch*, 796 F.Supp. 306; *Long v. Hershey Chocolate, U.S.A.*, No. CV–91–1689, 1992 U.S.Dist. LEXIS 6583 at *14–15 (M.D.Pa. May 1, 1992) (citing cases). In *Fritsch*, the court observed that:

> The method and extent of trial preparation is profoundly affected by the remedies and procedure applicable at the time suit is begun. The vast variation in the amount of possible recovery and the identity of the trier of fact has great effect on many trial preparation decisions. Full blown civil litigation involving both compensatory and punitive damages before a jury is far removed from non-jury litigation with conciliation mechanisms and only limited equitable non-punitive relief.

*Id.* 796 F.Supp. at 312.

The *Jackson* court stated, however, that even if a defendant did assert that it would have acted differently had it known that it would be subject to a jury trial and increased damages, the Court would still apply the 1991 Act retroactively. In its words, "[e]mployment discrimination based on race was reprehensible prior to *Patterson* and remains reprehensible today. As such, the Court will not sanction any stance that employers have a right to discriminate under a cost-benefit analysis." *Id.* 1992 WL 111105 at *6, 1992 U.S.Dist. LEXIS 6290 at *20.

The *Jackson* court also noted that when Congress enacts a statute to correct erroneous judicial interpretations of previous legislation and restore congressional intent, retroactive application of the statute is appropriate. *See Jackson*, 1992 WL 111105 at *6 n. 8, 1992 U.S.Dist. LEXIS 6290 at *15 n. 8 (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748, 754–55 (2d Cir.1987)). The 1991 Act provided that its purpose is "to respond to recent decisions of the Supreme Court," Pub.Law No. 102–166 § 3(4), specifically intending to overturn the Court's restrictive interpretation of § 1981 in *Patterson*. From this the *Jackson* court drew added support for its conclusion that retroactivity was appropriate. *Id.; see also Graham v. Bodine Electric Co.*, 782 F.Supp. 74, 76 (N.D.Ill.1992) (reaching same conclusion).

The question we must answer is whether the 1991 Act's provisions for compensatory and punitive damages at a jury trial for plaintiff's Title VII claims represent a change in plaintiff's substantive or procedural rights. If they are deemed substantive changes, application of the statute retroactively might be considered improper even under *Bradley* as a "manifest injustice." *See Jackson*, 1992 WL 111105 at *4, 1992 U.S.Dist. LEXIS 6290 at *16–19.

As the cases discussed above highlight, the point at which procedure becomes substantive is often too dimly lit to mark with any great clarity. Changes in procedure are often the product of a shifting notion of the nature of an injury and bring in their wake significant changes in individual behavior and the effectuation of substantive rights.

We conclude that the 1991 Act's authorization of compensatory and punitive damages in Title VII actions in a jury trial represents something more than merely procedural changes. The Supreme Court has recently stated that, "Congress' decision to permit jury trials and compensatory and punitive damages under the amended [1991 Civil Rights Act] signals a marked

change in its conception of the injury redressable by Title VII, and cannot be imported back into analysis of the statute as it existed at the time of this lawsuit." *United States v. Burke*, — U.S. —, —, 112 S.Ct. 1867, 1874, 119 L.Ed.2d 34 (1992).

Justices O'Conner and Thomas, dissenting in *Burke*, reached a contrary conclusion. Highlighting Congress' statement that "additional remedies are needed to deter unlawful harassment and intentional discrimination in the workplace," Pub.L. 102–166 § 2, 105 Stat. 1071, they reasoned that new remedies were added to more effectively deter discrimination and effectuate the law's established purposes rather than to reshape Congress' conception of the injuries caused by discrimination. *Id.* — U.S. at —, 112 S.Ct. at 1881.

We share the majority's view that the broad changes in the nature of the damages produced something more than simply a redoubled effort to deter unlawful discrimination and harassment. Significantly altering the degree and nature of the liabilities defendants are exposed to implicitly recognizes that the injuries resulting from intentional discrimination are more profound, more penetrating than originally recognized, and thus require broader remedies.

By making compensable such things as pain and suffering and injuries to a person's mental health, Congress had done more than merely increase an offender's potential liability by raising the roof on monetary recovery. True it seeks to deter discriminatory conduct through greater sanctions but, in so doing, it has also shifted how it views the injuries caused by such conduct.

Since application of the 1991 Act would impact upon the defendant's substantive rights and liabilities, we decline to apply the 1991 Act retroactively as to the claims at issue in this case. Other courts have reached similar conclusions. *See, e.g., Johnson v. Uncle Ben's,* 965 F.2d 1363; *Vogel v. Cincinnati,* 959 F.2d 594 (6th Cir.1992); *Petra Cablevision,* 793 F.Supp. at 430–431; *Tyree,* 783 F.Supp. at 892;

*Van Meter,* 778 F.Supp. at 84; *but cf. Lee v. Sullivan,* 787 F.Supp. 921 (N.D.Cal.1992) (finding compensatory damages and jury trials procedural in nature).

Our holding is buttressed by our belief that the better course to chart follows the *Bowen* line of cases on retroactivity. We are convinced that prospective application of statutes more closely adheres to the traditional view outlined by Justice Scalia in *Kaiser* that statutes are to be applied prospectively absent specific direction to the contrary. Congress could have included a provision specifying the statute's retroactive effect. Unable to overcome its partisan political divisions, it chose instead to throw an issue which it should have resolved into the laps of the courts.

We sympathize with the enormous task Congress faced in overcoming the political obstacles that dogged the passage of a new civil rights law. The Supreme Court's refusal to clarify the issue of retroactivity exacerbated these problems by enabling Congress to dodge this thorny political issue and, in so doing, invited the judicial maelstrom currently surrounding the 1991 Act. At some point soon, the Supreme Court will undoubtedly revisit the issue of retroactivity. Until then, unfortunately, the confusion and inconsistency plaguing the courts will persist. Defendant's motion to dismiss plaintiff's § 1981 claim, claims for compensatory and punitive damages, and demand for a jury trial is granted.

Having dismissed plaintiff's § 1981 claim and claims for compensatory and punitive damages under Title VII, we turn to his pendent state claims under the New York Human Rights Law. Defendant argues that these claims are barred by plaintiff's prior election of an administrative remedy and by the statute of limitations.

New York Executive Law § 297(9) provides in part that:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local com-

mission on human rights, or with the superintendent pursuant to the provisions of section [296–a] of this chapter, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed.

N.Y.Exec.Law § 297(9). The gravamen of this provision is clear: a plaintiff can either bring an administrative action or a court proceeding, but not both. Filing a complaint of discrimination with the DHR constitutes a binding election of an administrative remedy foreclosing access to the state courts for such claims. Defendant argues that plaintiff's *pro se* filing of his complaint with the DHR constitutes an election to proceed in the state administrative forum and a forfeiture of his right to assert claims in this court. Other courts in this district have agreed. *See, e.g., Keeley v. Citibank, N.A.,* 711 F.Supp. 157, 161 (S.D.N.Y.1989).

Plaintiff makes two responses. First, he argues that other courts in this district have recognized that certain state claims that came before the DHR can proceed in federal court under its pendent jurisdiction powers. *See, e.g., Long v. AT & T Information Systems, Inc.,* 733 F.Supp. 188, 197–198 (S.D.N.Y.1990).

The posture of the pendent state claims in *Long,* however, was vastly different. There, the complainant originally filed his complaint with the EEOC. The state claims came before the DHR only after the EEOC referred the charges to the DHR. Under these circumstances, the court refused to recognize a meaningful election of forums that would penalize the complainant who brings a federal claim which must first be filed with the EEOC in addition to a State Human Rights Law claim. *See id.* at 198.

Obviously, these equitable concerns upon which the court in *Long* grounded its recognition of pendent jurisdiction are not present in this case. Plaintiff chose to bring all his claims before the DHR first. We appreciate plaintiff's *pro se* status at that time and the procedural complexity of

raising discrimination claims. However, much of this complexity was resolved by the DHR which kept plaintiff's state law claims and referred his Title VII and ADEA claims to the EEOC for him. Unlike the case in *Long,* plaintiff by inadvertently filing all his claims with the DHR first was never in the position of losing an opportunity to raise his state claims due to his desire to pursue his federal remedies.

■ In applying federal pendent jurisdiction, federal courts are obligated to apply state substantive law to the state claim. The limitation on federal jurisdiction includes "any restrictions set by the state on whether a plaintiff may bring a court action regarding the claim." *Promisel v. First American Artificial Flowers,* 943 F.2d 251, 257 (2d Cir.1991).

■ Plaintiff's election of an administrative remedy is binding. Only when the administrative complaint is dismissed for administrative convenience will suit be subsequently allowed. *Goosley v. Binghamton City Sch. Dist.,* 101 A.D.2d 942, 475 N.Y.S.2d 924, 926 (3rd Dep't 1984). Plaintiff elected the administrative route and his complaint was not dismissed for administrative convenience but rather after a finding by DHR of no probable cause for his discrimination claims. Under these circumstances, plaintiff is unable under New York law to seek a state court remedy.

■ Plaintiff next argues that his discrimination claim based on his disability is a distinct cause of action from those previously filed with the DHR. We disagree. As a case cited by plaintiff instructs:

When a distinction can be made between the relief sought in a petition to the State Division of Human Rights and that claimed in court, the aggrieved individual is not necessarily viewed as having brought a single discriminatory grievance in two different forums so as to brand the first proceeding as a binding election of remedies.

*Id.* Here, plaintiff wished to assert a claim in federal court for discrimination based upon plaintiff's disability arising from the very same incidents involved in his race

and age discrimination claims brought before the DHR. By raising a disability discrimination claim, plaintiff plainly seeks the same relief he sought in his administrative complaint, namely back pay, reinstatement, and the like. Unlike the cases cited by plaintiff which involved discrimination claims and breach of contract claims, this new claim is not distinct but essentially the same discrimination grievance. Therefore, we must enforce the binding election of remedies plaintiff made when he filed his discrimination complaint with the DHR.

To conclude, this court, like the court in *Keeley*, is barred from exercising pendent jurisdiction over plaintiff's state law claims by N.Y.Exec.Law § 297(9). Accordingly, we grant defendant's motion to dismiss these claims as well.

SO ORDERED.