**Karen B. KENNEDY, Pamela L. Drozd and Trudy Swanson, Plaintiffs,**

v.

**Klaus FRITSCH, et al., Defendants.**

**No. 90 C 5446.**

United States District Court, N.D. Illinois, E.D.

May 14, 1992.

Ronald L. Futterman, Jennifer K. Soule, Hartunian, Futterman & Howard, Chtd., Chicago, Ill., for plaintiffs.

Elise Bloom & Gregory I. Rasin, Jackson Lewis Schnitzler & Krupman, New York City, Steven R. Peltin and Deborah L. Zaccarine, Altheimer & Gray, Chicago, Ill., for Klaus Fritsch & Morton's of Chicago, Inc.

Harvey L. Harris and Saul R. Wexler, Chicago, Ill., for Jorge "George" Jiminez.

Mark L. Shapiro, Debra J. Williams and Myrna B. Goldberg, Chicago, Ill., for Julio Dos Santos.

Stephen Jaffe, Chicago, Ill., for Ricardo Caballero.

Jack J. Carriglio and Daniel D. Kasten, Foran & Schultz, Chicago, Ill., for Alfonso Padilla a/k/a Romero "Doe".

### MEMORANDUM OPINION AND ORDER [1]

NORDBERG, District Judge.

### STATEMENT OF FACTS

Plaintiffs Karen B. Kennedy, Pamela L. Drozd, and Trudy Swanson are current or former waitresses employed by defendant Morton's of Chicago ("Morton's"). Plaintiffs allege that, while employed at defendant's downtown restaurant, they were subjected to sexual harassment and discrimination on the basis of their sex by certain individual employees of Morton's, also named as defendants. Plaintiffs initially filed suit in 1990. Their second amended complaint, filed March 12, 1991, included counts for violations of title VII of the Civil Rights Act of 1964, conspiracy to violate civil rights under 42 U.S.C. § 1985(3), as well as supplemental Illinois law claims.

Subsequently, Congress enacted the Civil Rights Act of 1991. Pub.L. No. 102–166 (1991). Section 102(a)(1) of the Act expands the remedies previously available for victims of intentional discrimination prohibited under title VII to include compensatory and punitive damages. Part (c) of section 102 provides for a right to jury trial if such damages are sought.[2]

Before the court is plaintiffs' motion for leave to file a third amended complaint adding a request for compensatory and punitive damages to their Title VII claim, and making other changes incorporating the elements necessary to plead such a claim.[3]

---

1. Recently, the Seventh Circuit issued its decision in *Mozee, et al. v. American Commercial Marine Service Co.*, 963 F.2d 929 (7th Cir.1992), holding that all the sections of the Civil Rights Act of 1991 applied only prospectively to cases on appeal. Because the parties in this trial court case raise a number of issues and arguments not before the *Mozee* court, which, in the court's opinion result in a slightly different outcome on the issue of the Act's prospective application, the Court issues the following opinion, essentially prepared before the *Mozee* decision.

2. Parties to an action for compensatory or punitive damages under section 102(a) would be entitled to a jury trial under the Seventh amendment in any event. *Tull v. U.S.*, 481 U.S. 412, 417–18, 421, 107 S.Ct. 1831, 1835, 1837, 95 L.Ed.2d 365 (1987).

3. Plaintiffs also seek to correct a misnomer of defendant Padilla. This aspect of plaintiff's motion can be granted without further comment.

The issue for the court is whether section 102 of the Act applies to cases filed prior to the enactment of the Act, or whether its effect is prospective only.

## ANALYSIS

A major point of contention in deciding whether the Act applies retroactively is the question of what sort of presumption on this subject is given to acts of Congress by the courts. Two Supreme Court decisions are in conflict on this issue. In *Bradley v. School Board of the City of Richmond*, 416 U.S. 696, 715–17, 94 S.Ct. 2006, 2018, 40 L.Ed.2d 476 (1974), the court held that all courts apply the law in effect at the time they render a decision, including statutory law, unless manifest injustice would result, or there was statutory language or legislative history to the contrary. Conversely, the court held in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), that congressional enactments and administrative rules would not be construed to apply retroactively unless their language required that result.

The court noted the tension existing between these two holdings in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990), but declined to resolve it at the time. A similar conflict exists as to which of the two holdings has been adopted as the law of this circuit. *Compare Littlefield v. McGuffey*, 954 F.2d 1337, 1343 (7th Cir.1992); and *F.D.I.C. v. Wright*, 942 F.2d 1089, 1095 (7th Cir.1991); with *Orrego v. W. Buena Joint Venture*, 943 F.2d 730, 735 (7th Cir.1991). Although ultimately, it is the court's conclusion that whether or not section 102 applies retroactively depends on the presumption applied, at this point this is not the relevant inquiry to make. Since, congressional intent, when clear, governs under either presumption, *Bonjorno*, 110 S.Ct. at 1577, the court must first seek Congress' intent, if any, with regard to the retroactivity of section 102 as it applies to pending cases in district court. The *Mozee* decision of course now governs with respect to application of the Act to pending cases at the appellate level.

## I. The Statutory Language

The starting point for interpretation of the intent of a statute is the statutory language itself. Absent a clearly expressed legislative intention to the contrary, the language of the statute is conclusive. *Bonjorno*, 110 S.Ct. at 1575. Nowhere in the Act did Congress expressly state that the Act, or specific sections of it, would be applied retroactively. However, the parties have raised several arguments in favor of retroactivity based on the language and structure of the text of the Act as a whole.

■ First, plaintiffs point out that one of the stated purposes of the act is "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination." Pub.L. No. 102–166, § 3(4). Where Congress acts to overrule the Supreme Court's interpretation of an existing statute, it is presumed to act retroactively. *Ayers v. Allen*, 893 F.2d 732, 754–55 (5th Cir.), *vacated on other grounds*, 914 F.2d 676 (en banc 1990), *cert. granted*, —— U.S. ——, 111 S.Ct. 1579, 113 L.Ed.2d 644 (1991); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir.1987); *Bd. of Education of E. Windsor Regional School v. Diamond*, 808 F.2d 987, 995–96 (3d Cir.1986). The logic behind this presumption is that Congress is merely acting to clarify a legislative purpose long in place, which the court has misinterpreted. *Diamond*, 808 F.2d at 995.

In addition, since judicial decisions are regularly applied to pending cases, *Chowaniec v. Arlington Race Track Park, Ltd.*, 934 F.2d 128, 131 (7th Cir.1991), it is only logical to assume Congress would intend its legislative correction of a judicial decision interpreting a statute to apply retroactively, to prevent inconsistent results under the statute. Although, therefore, those sections of the Act which specifically overrule prior Supreme Court interpretations of the civil rights laws apply

retroactively [4], this argument is inapplicable to section 102, which creates new statutory rights not previously interpreted by the Supreme Court.

The court is aware of the decisions in *Fray v. Omaha World Herald*, 960 F.2d 1370 (8th Cir.1992), and *DeVargas v. Mason & Hanger–Silas Mason Co.*, 911 F.2d 1377 (10th Cir.1990), which reject this approach, but respectfully declines to follow their logic. The *DeVargas* court based its rejection of the *Ayers* court's approach by taking the simultaneously inconsistent positions that it is Congress' constitutional role to make the law, and the court's role to say what it is, and that when the Supreme Court interprets a statute, its interpretation becomes part of the statute. *DeVargas*, 911 F.2d at 1387–88. This is the very reason the *Ayers* court ruled the way it did. *Supra*, p. 308.

Though this may be "a slender thread" to the *DeVargas* court, *id.*, at 1387, that court relies on the even more perilous fiction that, although a subsequent Congress is a distinct entity from its predecessor possessing a separate legislative intent, the judicial branch is an organic entity, whose decisions never lack continuity. *Id.*, at 1388. If this is so, what happens when the Supreme Court overrules a prior statutory interpretation, a not uncommon occurrence? *See Patterson v. McLean Credit Union*, 485 U.S. 617, 618–19, 108 S.Ct. 1419, 1421, 99 L.Ed.2d 879 (1988) (citing cases). The *Fray* court relies on a similar fiction, that it is proper to infer legislative intent from congressional action after a presidential veto, but not after an act of interpretation by the Supreme Court. *Fray*, 960 F.2d at 1378.

Second, plaintiffs point to language in sections 402(b) and 109(c) of the Act specifically restricting application of the provisions of those sections to prospective cases. Plaintiffs argue that the logical implication of this language is that Congress intended the rest of the Act to apply retroactively,

otherwise the language would be redundant. This logic runs afoul of the same considerations as plaintiff's first argument. Both section 109 and section 105 (to which the language of section 402(b) applies) were meant to overrule prior Supreme Court decisions, *EEOC v. Arabian American Oil Co.*, —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), and *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), respectively. Therefore, these sections would be presumed to apply retroactively for the reasons discussed *supra*, regardless of Congress' intent with regard to the rest of the Act. The language plaintiffs point to was intended only to counteract the presumption of retroactivity which attached to those specific sections, and has no implications for the remainder of the Act. *See also Mozee*, 963 F.2d at 933.

Finally, plaintiffs highlight language in section 116 of the Act regarding the effect of the Act on existing consent judgment or court ordered remedies. Plaintiffs have actually unwittingly made an argument against retroactivity. If Congress did not intend for the Act to affect pending consent judgments or injunctive remedies, it raises the inference that it did not intend the Act to apply to pending unresolved cases either.

Defendants' textual arguments are similarly inconclusive. First, defendants contend that section 402(a), which states that the provisions of the Act take effect on the date of enactment, except as otherwise stated, implies that the Act is not to be applied retroactively. This is not a reasonable interpretation of the text. Setting the effective date of the Act at enactment does not mean that the Act will not apply to cases pending before enactment, but that the date the Act will begin to apply to pending or future cases will not be postponed to allow parties time to prepare for the change in the law. *See, e.g., Bonjorno*, 110 S.Ct. at 1578.

---

4. Hence, this court has already ruled that section 113 of the Act, which allows expert witness fees to be collected as part of an award of attorney's fees under 42 U.S.C. § 1988, applies retroactively. *Countess Cary v. CHA*, No. 87 C 6998, 1991 WL 274443, at *4 1991 U.S. Dist. Lexis, at 10 (December 13, 1991).

Second, defendants cite to *Van Meter v. Barr*, 778 F.Supp. 83 (D.D.C.1991), for the proposition that the text of section 102 defining who may sue under the section implies that it does not apply to cases pending before enactment. Section 102(a)(1) allows a "complaining party" to recover compensatory and punitive damages. Part (d)(1)(A) defines a complaining party as the EEOC, the Attorney General of the United States, or a person who *may bring* an action or proceeding under title VII of the Civil Rights Act of 1964." (emphasis added). The *Van Meter* court interpreted the words "may bring" to mean that only parties who have not yet brought their action are entitled to invoke the new Act.

This court respectfully disagrees with the construction given this language in *Van Meter*. The language of part (d)(1)(A) has nothing to do with pending cases, and everything to do with the standing of the parties to invoke the jurisdiction of the federal courts. The word "may" was not meant to imply parties who "may" intend to sue in the future, but parties who "may" sue now because they have fulfilled the prerequisites necessary to file an action in the district court. *See* 42 U.S.C. § 2000e–5(f).

Defendants' last argument is their best. The 1990 version of the Act, passed by Congress but vetoed by the President, contained language explicitly applying its provision retroactively. This language is missing from the Act as enacted, and defendants argue this implies Congress did not want the Act to be retroactive. This is certainly a plausible interpretation, but unfortunately, there is no evidence of any kind as to why Congress chose to exclude an explicit declaration of retroactivity from the final version of the Act. The President's statement to the public explaining his veto decries the 1990 version of the Act as a "quota bill," and does not broach the subject of retroactivity. Weekly Comp. Pres.Doc., Volume 26, No. 43, at 1631 (October 20, 1990). The President's veto message to the Senate does mention "unfair retroactivity rules" as one of several incentives to litigation in the bill which should be eliminated. Id., at 1634. Even so this is

not a clear statement that any retroactive application of the Act is unacceptable—it could plausibly be interpreted to mean the President would have accepted retroactive application to pending cases, but not to instances of pre-enactment conduct where no suit was filed. Finally, the civil rights bill proposed by the President, which contained explicit language limiting its application to prospective cases, was not adopted by Congress. *Mozee*, 963 F.2d at 933 n. 3.

## II. The Legislative History

The legislative history of the Act, such as it is, provides an even less compelling portrait of Congress' intent on the issue of retroactivity. The bill which eventually became the Act, S. 1745, was an amendment offered as a substitute to H.R. 1, the original version passed by the House. The Senate bill was never referred to committee, so the entire direct history of the Act consists of statements made during floor debates and memoranda inserted into the Congressional Record. Defendants put great emphasis on the remarks of Senator Danforth, one of the cosponsors of the bill, denying the bill would apply retroactively. Of course, Senator Danforth also stated that:

> [A] court would be well advised to take with a large grain of salt floor debate and statements placed into the Congressional Record which purport to create an interpretation for the legislation that is before us ... [A]ny judge who tries to make legislative history out of the free-for-all that takes place on the floor of the Senate is on very dangerous grounds.

137 Cong.Rec. § 15325, § 15346 (October 29, 1991). The court is inclined to agree.

A much better sense of the sense of intent of Congress comes from the reports of the House Committees on the Judiciary and on Education and Labor for H.R. 1, the bill passed by the House and eventually substituted for by S. 1745, which became the Act. Although these materials were never really considered in passing S. 1745, section 106 of H.R. 1 is very similar to section 102 of the Act, and the reports are perhaps the best statement of Congress' purposes in expanding the remedies avail-

able to victims of intentional acts of discrimination in the workplace. Unfortunately they are no more dispositive of Congress' intent as to the retroactivity of section 102 than arguments based on the text of the act.

The committees' statements of the purposes behind the expansion of remedies for title VII plaintiffs create conflicting inferences on the issue of retroactivity. One of the purposes behind allowing title VII plaintiffs to sue for compensatory and punitive damages for intentional acts of discrimination was to equate the remedies available for victims of intentional gender and religious-based discrimination with those available for victims of racial discrimination under 42 U.S.C. § 1981. H.R.Rep. No. 40(I), 102d Congress, 1st Session, at 65 (1991); H.R.Rep. No. 40(II), 102d Congress, 1st Session, at 24–28 (1991), U.S.Code Cong. & Admin.News 1991, p. 549. If Congress was concerned about the inequality of remedies between victims of racial and gender or religious discrimination, it would make little sense for the Act to be prospective, precluding some of the objects of this concern from relief. The same inference can be drawn from another of the purposes stated by the Education and Labor Committee, making victims of intentional discrimination whole for the injury to their careers and mental health. H.R.Rep. No. 40(I), at 66–69. On the other hand, the Education and Labor Committee also found that enhancing the remedies available to title VII plaintiffs would provide a more efficient deterrent to future acts of intentional discrimination. H.R.Rep. No. 40(I), at 69–70. The implication of this provision against retroactivity is obvious.

Defendants insist that, even if the court can find no clear statutory intent from the language or legislative history of the Act, the court should abide by the post-enactment interpretation given to the Act by the EEOC. EEOC Policy Guidance On Retroactivity of Civil Rights Act of 1991 (BNA January 2, 1992). Defendants argue that the EEOC's expertise in the area of employment discrimination and its authority to implement the provisions of title VII entitle its judgment that the act does not apply retroactively to substantial deference. It is the court's opinion that the EEOC's interpretation of the Act is not entitled to the deference defendants suggest, either as a matter of administrative law, or on its own merits.

▮ Where Congress has delegated authority to an administrative agency to interpret the provisions of a statute in its rules and regulations, that interpretation is given controlling weight unless arbitrary or capricious. *Chevron U.S.A. Inc. v. Natural Resources Defense Counsel*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Where, as here, Congress did not confer authority on the agency to promulgate rules and regulations, the deference afforded the agency's statutory interpretations is tempered by the thoroughness evident in its consideration, the validity of its reasoning, consistency with earlier and later positions, and "all those factors which give it power to persuade, if lacking power to control." *Arabian American Oil*, 111 S.Ct. at 1235. Previously, the Supreme Court has based its deference to the EEOC's interpretations of title VII on the agency's primary enforcement responsibility for the statute. *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 108 S.Ct. 1666, 1671, 100 L.Ed.2d 96 (1988).[5]

Examining the EEOC's policy statement, the court finds it to merit little deference in this matter. The EEOC based its conclusion that section 102 of the Act was not meant to be applied retroactively on the text and legislative history of the Act, the conflicting holdings of *Bradley* and *Bowen,* and an examination of recent district court decisions on the retroactivity question. In other words, the EEOC performed the same sort of analysis that any district

---

**5.** While the court is of course bound by *Commercial Office Products,* the logical foundation for its holding is porous. It is hard to see why a grant of standing to sue under a specific statute entitles any party, be they individual or agency, to tell the courts how to interpret the substantive provisions of that statute. This idea has no more force if the party files one lawsuit under the statute, or one thousand.

court would undertake in deciding any question of statutory interpretation, and which this court is performing instanter. This is hardly the result of the EEOC's "administrative expertise relating to the resolution of problems in employment discrimination." *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971).

### III. The Presumption to Be Applied

■ Because, the legislative intent of Congress is unclear, resolution of the question of the retroactive application of section 102 depends on which judicial presumption the court chooses to apply. The court is aware that, prior to *Mozee*, recent decisions in this district have indicated that *Bradley* is the more appropriate case. *Mojica v. Gannett Co.*, 779 F.Supp. 94, 96 (N.D.Ill. 1991); *Bristow v. Drake Street, Inc*, No. 87 C 4412, 1992 WL 14262, at * 1, n. 2 1992 U.S. Dist. Lexis 499, at 1, n. 2 (January 17, 1992), 57 Fair Empl.Prac.Cas. (BNA) 1367; *Graham v. Bodine Electric Co.*, 782 F.Supp. 74, 75 (1992), 57 Fair. Empl.Prac.Cas. (BNA) 1428; *but see McCullough v. Consolidated Railroad Corp.*, 785 F.Supp. 1309, 1310–11 (1992) (result is the same under either *Bradley* or *Bowen* ). Nevertheless, the court concludes, as the Seventh Circuit has now done, that *Bowen* is the appropriate presumption to apply. In considering the tension existing between the two presumptions, the *Bonjorno* court referred to the *Bowen* decision as a generally accepted axiom. *Bonjorno*, 110 S.Ct. at 1577. When the Supreme Court ultimately resolves the tension between the two cases— and Justice Scalia's concurrence suggests the Court will do so soon—this court expects *Bowen* to be the prevailing law.

Further, this court believes *Bowen* should be the prevailing law. To begin with, the holding of *Bowen* is a venerable and well established principle in the law, embodying the idea that conduct should ordinarily be assessed under the law existing at the time it took place. *Bonjorno*, 110 S.Ct. at 1586–87 (Scalia, J., concurring); *Mozee*, 963 F.2d at 934–35. Moreover, it is a bright line rule, which would simplify the

task of the trial judge in expeditiously deciding retroactivity questions in the preparation and trial of civil rights cases.

### IV. Application of the Act to the Preparation and Trial of This Case

■ While the *Mozee* court found that both the substantive and procedural provisions of the 1991 Civil Rights Act should be prospectively applied, the court confined its decision to the fifteen year old appellate case before it, stating in part:

> In any event, we need not decide what procedure and damage provisions a trial court should apply at the beginning of a trial in order to assess the applicability of the 1991 Civil Rights Act to the issues remanded in [*Mozee v. American Commercial Marine Service, Co.*, 940 F.2d 1036 (7th Cir.1991) ] *Mozee II*.

*Mozee*, 963 F.2d at 940. Nevertheless, it is this court's opinion that the reasoning of *Mozee*, together with the Supreme Court's decisions in *Bonjorno* and *Bowen*, dictate that both the substantive and procedural portions of the Act apply prospectively to trial court proceedings as of the date of filing of the suit, not at the actual time of trial. The method and extent of trial preparation is profoundly affected by the remedies and procedure applicable at the time suit is begun. The vast variation in the amount of possible recovery and the identity of the trier of fact has great effect on many trial preparation decisions. Full blown civil litigation involving both compensatory and punitive damages before a jury is far removed from non-jury litigation with conciliation mechanisms and only limited equitable non-punitive relief.

### CONCLUSION

Every newly enacted statute should possess an explicitly worded congressional declaration of retroactive or prospective application. Congress certainly knows how to do this. *Orrego*, 943 F.2d at 735. If Congress for any reason chooses not to do so, it should know what will be the result. A bright line test will avoid a great waste of litigant and judicial resources and the undue confusion of conducting a provision-by provision analysis of an act to distinguish between those provisions regulating proce-

dure and damages, and those affecting substantive rights and obligations. *Mozee*, 963 F.2d at 940; *Burchfield v. Derwinski*, 782 F.Supp. 532, 536 (D.Colo.1992).

Courts should not engage in the creation of judicial doctrines such as the manifest injustice exception to the *Bradley* test, which is often a surrogate for policy preferences. *Bonjorno*, 110 S.Ct. at 1587 (Scalia, J., concurring). These preferences should be made by Congress before enacting a statute, rather than by the courts post facto. Adopting the presumption of *Bowen* would forewarn everyone involved in the legislative process that retroactive application of any legislation can occur only by express act of Congress. Future opinions such as this would hopefully no longer be necessary.

For the foregoing reasons, plaintiffs' motion for leave to file its third amended complaint is granted to allow the naming of defendant Padilla, but is otherwise denied.