Luis **DAVILA**, Plaintiff,

v.

The **NEW YORK HOSPITAL**,
Defendant.

**No. 91 Civ. 5992 (SWK).**

United States District Court,
S.D. New York.

Jan. 4, 1993.

Alterman & Boop, P.C. by Daniel L. Alterman, New York City, for plaintiff.

Kelley, Drye & Warren by Eugene T. D'Ablemont, Rita A. Hernandez, Patrick Della Valle, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

At issue in this case involving alleged employment discrimination on the basis of national origin, is whether certain provisions of the Civil Rights Act of 1991 (the "Act" or the "1991 Act"), Pub.L. No. 102–166, 105 Stat. 1071 (1991), should be applied retroactively to cases pending at the time of the Act's enactment that involve conduct occurring before its passage. Also at issue, is whether plaintiff is entitled to punitive damages and a jury trial on his state law claims.

## INTRODUCTION

Plaintiff Luis Davila ("Davila"), an immigrant to this country from Bolivia, was employed by defendant New York Hospital (the "Hospital") from June 1983 through April 1989. From June 1986 until his termination, Davila held the position of cardiovascular technician. Davila alleges that he was forced to resign from this position on March 15, 1989, because of his national origin.

On October 6, 1989, Davila filed a charge of discrimination based upon national origin with the Equal Employment Opportunity Commission ("EEOC"). In his complaint, Davila alleged that he was subjected to differential treatment in the terms and conditions of his work requirements and to harassment based upon his national origin. Davila further alleged that this discrimination resulted in his constructive discharge. On June 12, 1991, the EEOC dismissed Davila's complaint and advised him of his right to sue within 90 days of his receipt of the dismissal.

Davila commenced this action on September 5, 1991, by serving and filing a *pro se* complaint. His complaint alleged that he had been terminated by the Hospital on the basis of his national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

Thereafter, Davila retained an attorney who served an amended complaint on the Hospital on March 6, 1992. Davila's amended complaint realleges his Title VII claim, and asserts new causes of action under 42 U.S.C. § 1981 ("Section 1981") and the New York State Human Rights Law, N.Y.Exec.Law § 296 *et seq.* (the "New York HRL"). Specifically, Davila alleges that he was harassed by the imposition of discriminatory work standards and conditions; subjected to work assignments and conditions less favorable than similarly situated non-Hispanic employees; and constructively discharged, all in violation of Section 1981, Title VII and the New York HRL. In his prayer for relief, Davila seeks declaratory and injunctive relief, reinstatement, back pay, and compensatory and pu-

nitive damages. Davila has demanded a jury trial for each of his claims.

In amending his complaint, Davila seeks to apply retroactively certain provisions of the 1991 Act, which became effective on November 21, 1991, more than two months after Davila filed his suit. Specifically, Davila seeks to apply those portions of the 1991 Act that would allow him to maintain his Section 1981 claim, seek compensatory and punitive damages under Title VII and demand a jury trial for his Title VII claim.

Prior to the enactment of the 1991 Act, Davila's Section 1981 claim was barred by *Patterson v. McLean Credit Union*, 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989), wherein the Supreme Court held that "section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." In addition, prior to the Act's passage, the Second Circuit had ruled that trial by jury and compensatory and punitive damages were unavailable to Title VII claimants. *See, e.g., Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 953 (2d Cir.1988).

The 1991 Act, however, made three significant changes which bear on Davila's claims. First, Section 101 explicitly overrules the *Patterson* decision, stating:

> For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms,

and conditions of the contractual relationship.

42 U.S.C. § 1981(b). Second, Section 102 permits a party complaining of unlawful intentional discrimination under Title VII to recover compensatory and punitive damages if the complaining party cannot recover under Section 1981. Finally, Section 102(c) states that a complaining party who seeks compensatory or punitive damages may demand a jury trial.

The Hospital contends, however, that the 1991 Act may not be applied retroactively, and thus moves, pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, to dismiss and strike portions of Davila's amended complaint. Specifically, the Hospital seeks to strike Davila's demand for a jury trial and compensatory and punitive damages under Title VII, and to dismiss Davila's Section 1981 claim for failure to state a claim upon which relief may be granted. Unrelated to the retroactivity issue, the Hospital seeks to strike Davila's demand for a jury trial and punitive damages under the New York HRL on the grounds that punitive damages are not available under the statute,[1] and that Davila has waived his right to a jury trial by requesting both legal and equitable relief.

## DISCUSSION

### I. Retroactivity of the 1991 Act

■ In enacting the 1991 Act, Congress sought to "respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination." 1991 Act, § 3.[2]

---

**1.** Since Davila now concedes that punitive damages are not available in employment discrimination cases brought under the New York HRL, *see Thoreson v. Penthouse Int'l, Ltd.*, 179 A.D.2d 29, 583 N.Y.S.2d 213 (1st Dept.1992), NYLJ April 6, 1992, p. 25, the Hospital's motion to strike Davila's demand for punitive damages under the New York HRL is granted.

**2.** As detailed in *Smith v. Petra Cablevision Corp.*, 793 F.Supp. 417, 419 n. 3 (E.D.N.Y.1992), the Act overturns or modifies eight recent Supreme Court decisions: (1) Section 101 overturns the decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), as regards the scope of 42 U.S.C. § 1981;

(2) Sections 104 and 105 overturn the decision in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), regarding the legal standards controlling disparate impact cases; (3) Section 107 overturns the decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); (4) Section 108 overturns the decision in *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), as regards the permissibility of collateral challenges to affirmative action plans in consent decrees and court orders; (5) Section 109 overturns the decision in *EEOC v. Aramco*, —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), as regards the applicability of Title VII in overseas workplaces; (6) Section

As discussed above, the Act changed prior law in three ways relevant to the instant case. First, Section 101(b) expanded the scope of Section 1981. Second, Section 102 provided that a party complaining of unlawful intentional discrimination under Title VII may recover compensatory and punitive damages if the party cannot recover under Section 1981. Third, Section 102(c) stated that where a complaining party seeks compensatory or punitive damages, any party may demand a jury trial.

It is undisputed that Davila's Section 1981 claim, his requests under Title VII for compensatory and punitive damages and his demand for a jury trial under Title VII depend entirely on the retroactivity of these provisions of the 1991 Act. If these provisions apply prospectively only, Davila's Section 1981 claim, his damages requests, and demand for a jury trial must be dismissed since the action was filed on September 5, 1991, before the 1991 Act was enacted. Thus, the Court must decide whether the 1991 Act's provisions should be applied retroactively to cases pending at the time of the Act's enactment that involve conduct occurring before its passage.

Supreme Court authority on the retroactivity of legislation has proceeded along divergent lines, producing a split among courts on the question of the Act's retroactivity.[3] In *Bradley v. School Board of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Court held that "a court is to apply the law in effect at the time it renders its decision." *Bradley*, 416 U.S. at 712, 94 S.Ct. at 2016. The two exceptions to this rule are where retrospective application of a law would result in manifest injustice to one of the parties or where there is clear congressional intent to the contrary. *Id.* at 713, 94 S.Ct. at 2017. More recently, however, the Supreme Court has spoken on retroactivity in a contrary manner. In *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court stated that "retroactivity is not favored in the law ... congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. at 471.

The conflict between these two views was recognized in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827,

---

112 overturns the decision in *Lorance v. AT & T*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989); (7) Section 113 overturns the decision in *West Virginia University Hospitals, Inc. v. Casey*, — U.S. —, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); and (8) Section 114 overturns the decision in *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). The general effect of the 1991 Act was to restore the law to the state at which it existed prior to these decisions.

**3.** Almost all of the Circuit Courts which have addressed the question of the retroactivity of the 1991 Act have found the Act prospective only. *See Baynes v. AT & T Technologies, Inc.*, 976 F.2d 1370, 1373 (11th Cir.1992); *Gersman v. Group Health Ass'n., Inc.*, 975 F.2d 886, 899 (D.C.Cir.1992); *Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225, 229 (7th Cir.), *reh, en banc, denied,* (1992); *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1373–74 (5th Cir.1992); *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992); *Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1377 (8th Cir.1992); *Vogel v. Cincinnati*, 959 F.2d 594, 598 (6th Cir.1992). The sole exception is the Ninth Circuit which applied retroactively the portion of the statute governing expert wit-

ness fees. *Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir.1992).

The Second Circuit has not yet given an opinion on the 1991 Act's retroactivity. *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1181–82 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1048 (2d Cir.1992). However, several courts in this Circuit have done so to different conclusions. *Compare e.g., Hill v. New York City Bd. of Educ., Bureau of Pupil Transp.*, 808 F.Supp. 141 (E.D.N.Y.1992) (declining to apply act retroactively) and *Stout v. International Business Machines Corp.*, 798 F.Supp. 998 (S.D.N.Y.1992) (same) and *Kelber v. Forest Electric Corp.*, 799 F.Supp. 326 (S.D.N.Y. 1992) (same) and *Smith v. Petra Cablevision Corp.*, 793 F.Supp. 417 (E.D.N.Y.1992) (same) and *McLaughlin v. State of New York*, 784 F.Supp. 961 (N.D.N.Y.1992) (same) with *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172 (S.D.N.Y.1992) (applying act retroactively) and *Wisdom v. Intrepid Sea–Air Museum*, No. 91 Civ. 4439, 1992 WL 168224, 1992 U.S.Dist.LEXIS 9424 (S.D.N.Y. June 26, 1992) (same) and *Jackson v. Bankers Trust Co.*, No. 88 Civ. 4786, 1992 WL 111105, 1992 U.S.LEXIS 6290 (S.D.N.Y. May 4, 1992) (same); and *Croce v. V.I.P. Real Estate, Inc.*, 786 F.Supp. 1141 (E.D.N.Y.1992) (same).

837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990). The *Kaiser* Court, however, did not find it necessary to "reconcile the two lines of precedent" because it found that under either view "where congressional intent is clear, it governs." *Kaiser*, 494 U.S. at 837, 110 S.Ct. at 1577. In *Kaiser*, it was determined that congressional intent was clear that the statute at issue was to apply prospectively only. *Id.*[4] Congressional intent then is the starting point of the Court's discussion.

### A. The Language of the 1991 Act

Section 402(a) of the Act states that "[e]xcept as otherwise specifically provided, this Act and the amendments made by the Act shall take effect upon enactment." Two other provisions are also relevant to the question of retroactivity. Section 109(c) states that "[t]he amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act."[5] In addition, Section 402(b) provides that:

> Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

1991 Act, § 402(b).[6]

Relying primarily on the Ninth Circuit's decision in *Davis v. City and County of San Francisco*, 976 F.2d 1536, in which the court retroactively applied the portion of the Act governing expert witness fees, Davila contends that the language in Sections 109(c) and 402(b), mandating prospective application in two specific instances, demonstrates that Congress intended the remaining provisions of the Act to apply retroactively. According to Davila, the only way to give effect to Sections 109(c) and 402(b), and avoid redundancy, is to interpret the Act as generally applying to pending cases. If the Act were intended to be prospective only, there would have been no need to include those sections.

Almost all courts that have examined this issue agree that whether Congress intended prospective or retroactive application of the 1991 Act cannot be determined from the language of the statute.[7]

While the prospective-only status of Sections 109(c) and 402(b) does provide some support for the inference that Congress intended the rest of the Act to apply retro-

---

**4.** Although agreeing with the majority that the statute in question should be applied prospectively, in a concurring opinion, Justice Scalia argued that the Court should take the opportunity presented to resolve the conflict between the *Bradley* and *Bowen* line of cases. *Kaiser*, 494 U.S. at 841, 110 S.Ct. at 1578. Justice Scalia also argued that "the rule … expressed in … *Bradley* was wrong," and that "the clear rule of construction that has been applied except for the last two decades of confusion, since the beginning of the Republic and indeed since the early days of the common law," should be reaffirmed: "absent specific indication to the contrary, the operation of nonpenal legislation is prospective only." *Id.* 494 U.S. at 841, 110 S.Ct. at 1578.

**5.** This section extends the protections of the Civil Rights Act of 1964, as amended, to United States citizens working overseas for American companies.

**6.** This section was inserted by Senator Murkowski of Alaska so that the provisions relating to overturning the *Wards Cove* case did not apply to the *Wards Cove* litigation itself.

**7.** *See Baynes v. AT & T Technologies, Inc.*, 976 F.2d at 1373; *Gersman v. Group Health Ass'n,* *Inc.*, 975 F.2d at 889; *Johnson v. Uncle Ben's, Inc.*, 965 F.2d at 1372; *Mozee v. American Commercial Marine Service Co.*, 963 F.2d at 932; *Fray v. Omaha World Herald Co.*, 960 F.2d at 1375–77; *Vogel v. Cincinnati*, 959 F.2d at 597–98; *see also Hill v. New York City Bd. of Educ., Bureau of Pupil Transp.*, 808 F.Supp. at 157; *Bridges v. Eastman Kodak Co.*, 800 F.Supp. at 1174–75; *Stout v. International Business Machines Corp.*, 798 F.Supp. at 1002; *Kelber v. Forest Electric Corp.*, 799 F.Supp. at 337; *Boss v. Board of Educ., Union Free School Dist. # 6*, 798 F.Supp. 116, 118–19 (E.D.N.Y.1992); *Wisdom v. Intrepid Sea–Air Museum*, 1992 WL 168224, at *2, 1992 U.S.Dist.LEXIS 9424, at *6–7; *Smith v. Petra Cablevision Corp.*, 793 F.Supp. at 420–22; *Jackson v. Bankers Trust Co.*, 1992 WL 111105, at *3, 1992 U.S.Dist.LEXIS 6290, at *8–9; *Croce v. V.I.P. Real Estate, Inc.*, 786 F.Supp. at 1143–44; *McLaughlin v. State of New York*, 784 F.Supp. at 968–69; *but see Davis v. City and County of San Francisco*, 976 F.2d at 1550–53 (holding that the language of the Act reveals Congress' clear intention that the majority of the Act's provisions be applied to cases pending at the time of its passage).

actively, there are other plausible reasons for the addition of these provisions. There is evidence that Congress added them to ensure that, however the courts interpreted the rest of the Act, these provisions would be interpreted to have prospective effect only. *See Bridges v. Eastman Kodak Co.*, 800 F.Supp. at 1175 (citing *Mozee v. American Commercial Marine Service Co.*, 963 F.2d at 933, n. 2). Therefore, "sections 109(c) and 402(b) do not 'clearly express' congressional intent that the Act be applied retroactively." *Id.* at 1175 (citing *Stout v. International Business Machines Corp.*, 798 F.Supp. at 1002; *Jackson v. Bankers Trust Co.*, 1992 WL 111105, at *3, 1992 U.S.Dist.LEXIS 6290, at *9).

In addition, that the Act "shall take effect upon enactment" provides no guidance as to whether the Act applies to pending cases. *See Mozee v. American Commercial Marine Service Co.*, 963 F.2d at 932; *see also Stout v. International Business Machines Corp.*, 798 F.Supp. at 1002 (conflicting interpretations drawn from this language); *Jackson v. Bankers Trust Co.*, 1992 WL 111105, at *3, 1992 U.S.Dist.LEXIS 6290, at *8 (402(a) gives no indication of whether the Act should be applied retroactively or prospectively). Indeed this clause is susceptible to several interpretations:

> it might mean that the 1991 Act applies to conduct which occurred after the enactment, it might mean that the Act applies to cases filed after the enactment, it might mean that the Act applies to all proceedings beginning after the enactment, it might mean that the Act's provisions apply to all pending cases at any stage of the proceedings, or it might mean, that the Act's procedural provisions apply to proceedings begun after enactment and the substantive provisions apply to conduct that occurs after the enactment.

**8.** Section 15(a)(4) of the Civil Rights Act of 1990 stated that Section 8, providing for jury trials, compensatory and punitive damages, "shall apply to all proceedings pending on or commenced after the date of the enactment of this Act."

**9.** *See Gersman v. Group Health Ass'n., Inc.*, 975 F.2d at 892 (the legislative history does not resolve the question of congressional intent);

*Mozee v. American Commercial Marine Service Co.*, 963 F.2d at 932. Given this multitude of possibilities, Section 402(a) provides little guidance as to the retroactivity of the Act. *Id.*

Further, Congress has demonstrated on several occasions that when it seeks to make a law retroactive it knows how to make its intention clear. *Smith v. Petra Cablevision Corp.*, 793 F.Supp. at 422 (citing The Black Lung Benefits Act, 30 U.S.C. § 945(a)(1) and (c) (1986) (providing for processing claims "pending on, or denied on or before" the effective date of the statute, and awarding benefits retroactively)). In fact, the Civil Rights Act of 1990, which was vetoed by President Bush, specifically provided for retroactive application.[8] In his veto message, President Bush mentioned unfair retroactive rules as one of the bill's features that should be eliminated. *See President's Message to the Senate Returning Without Approval the Civil Rights Act of 1990*, 26 Weekly Comp.Pres. Doc. 1632, 1634 (Oct. 22, 1990). Thus, while Congress clearly intended to apply the provisions of the 1990 Act retroactively, such clear direction is absent from the present version of the Act.

Accordingly, like most courts before it, the Court finds that it cannot determine from the language of the Act whether Congress intended the Act to apply retroactively or prospectively. The Court looks next to the legislative history of the 1991 Act.

### B. The Legislative History of the 1991 Act

As in the case of the statutory language, most courts have concluded that the legislative history of the Act does little to clarify congressional intent on the issue of retroactivity.[9] As one district court ob-

*Johnson v. Uncle Ben's, Inc.*, 965 F.2d at 1372 ("legislative history is inconclusive on the question of retroactive application"); *Luddington v. Indiana Bell Telephone Co.*, 966 F.2d at 227 (Congress "dumped the [retroactivity] question into the judiciary's lap without guidance"); *Mozee v. American Commercial Marine Service Co.*, 963 F.2d at 934 ("a clear indication of congressional intent cannot be deciphered from the

served, "Congress in this new civil rights legislation punted on the question of whether the Act applies retroactively." *Wisdom v. Intrepid Sea–Air Museum,* 1992 WL 168224, at *2, 1992 U.S.Dist.LEXIS 9424, at *7 (quoting *King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala. 1991)). This Court's review of the legislative history leads it to the same conclusion; Congress' intent as to retroactivity is not clear.

### C. The EEOC's Policy Statement

■ Defendant New York Hospital contends that the Court should be guided by the interpretation of the Act set forth in a policy statement issued by the EEOC on December 27, 1991. In it, the EEOC indicated that it would "not seek damages under the Civil Rights Act of 1991 for events occurring before November 21, 1991." E.E.O.C. Notice No. 915.002 (Dec. 27, 1991).

While cases in this Circuit conflict on the issue of the Act's retroactivity, they are uniform in according little deference to the EEOC Policy Guidance in resolving this issue. *See Bridges v. Eastman Kodak Co.,* 800 F.Supp. at 1176 (citing *Stout v. International Business Machine Corp.,* 798 F.Supp. at 1004; *Kelber v. Forest Elec. Co.,* 799 F.Supp. at 337 n. 13; *Wisdom v. Intrepid Sea–Air Museum,* 1992 WL 168224, at *2, 1992 U.S.Dist.LEXIS 9424, at *7–8; *Jackson v. Bankers Trust Co.,* 1992 WL 111105, at *4, 1992 U.S.Dist.LEXIS 6290, at *11). As one district court stated:

> Where an agency is not empowered to promulgate its own regulations, courts may accord less weight to the agency's interpretation of a statute. Indeed, the Supreme Court has invoked this idea in its refusal to defer to the EEOC's con-

struction of Title VII. Moreover, as other courts have noted, the EEOC, as only one of many actors in the field, does not possess any exclusive or special expertise in civil rights meriting greater deference. The deference to which the EEOC's position is entitled thus rests more generally upon the persuasiveness of its reasoning.

> As other courts have noted, the EEOC's position was based upon its conclusions regarding the language of the statute, the legislative history of the Act, and an examination of judicial decisions, in short the same sort of statutory analysis courts regularly engage in. Unlike the EEOC, we do not find either the Act's language or its legislative history especially instructive, let alone decisive.

*Stout v. International Business Machines Corp.,* 798 F.Supp. at 1004 (citations omitted).

Thus, the *Stout* court concluded that the EEOC's issuance of a policy statement regarding the Act was neither determinative nor entitled to special deference. *Id.; see also Smith v. Petra Cablevision Corp.,* 793 F.Supp. at 425 (giving little deference to EEOC's reasoning). The Court agrees that the EEOC's interpretation is entitled to no special deference. Accordingly, the EEOC's policy statement will not control the resolution of the retroactivity issue in this case.

### D. Legal Presumptions of Retroactivity

As the foregoing discussion indicates, it is not possible to discern from either the language of the Act or its legislative history any clear intent on the part of Congress that the Act is to apply either prospectively or retroactively, nor is the EEOC interpre-

legislative history"); *Vogel v. Cincinnati,* 959 F.2d at 598 (the legislative history provides no guidance on this question); *see also Hill v. New York City Bd. of Educ., Bureau of Pupil Transp.,* 808 F.Supp. at 157–58 (same); *Bridges v. Eastman Kodak Co.,* 800 F.Supp. at 1175 (same); *Stout v. International Business Machines, Corp.,* 798 F.Supp. at 1003–4 (same); *Kelber v. Forest Electric Corp.,* 799 F.Supp. at 337–38 (same); *Boss v. Board of Educ., Union Free School Dist. #6,* 798 F.Supp. at 119–20 (same); *Wisdom v. Intrepid Sea–Air Museum,* 1992 WL 168224, at *2, 1992 U.S.Dist.LEXIS 9424, at *6–7 (same);

*Smith v. Petra Cablevision Corp.,* 793 F.Supp. at 422–25 (same); *Jackson v. Bankers Trust Co.,* 1992 WL 111105, at *2, 1992 U.S.Dist.LEXIS 6290, at *10 (same); *Croce v. V.I.P. Real Estate, Inc.,* 786 F.Supp. at 1143–44 (same); *but see Fray v. Omaha World Herald Co.,* 960 F.2d at 1375–77 ("When a bill mandating retroactivity fails to pass, and a law omitting that mandate is then enacted, the legislative intent was surely that the new law be prospective only; any other conclusion simply ignores the realities of the legislative process").

tation of the Act controlling. Thus, the Court must turn to established legal presumptions to resolve this issue. The Supreme Court has, however, taken two different approaches to the problem of whether a statute should apply retroactively when legislative intent is unclear.

As set forth above, in *Bradley,* the Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016. Since Congress' intent does not clearly argue against retroactivity, and it may be argued that no injustice to New York Hospital would result if the Act were retroactively applied, *see Stout v. International Business Machines Corp.,* 798 F.Supp. at 1004, *Bradley* might support retroactive application of the 1991 Act.

However, in *Bowen,* the Court observed that retroactivity was not favored in the law, and that congressional enactments will not be construed to have retroactive effect unless their language requires this result. 488 U.S. at 208, 109 S.Ct. at 471. Since the language of the Act is ambiguous, *Bowen* would require prospective application. To date, the Supreme Court has not reconciled the tension between the *Bradley* and *Bowen* lines of cases. In *Kaiser,* the Court acknowledged the "apparent tension" between these two positions, but was not forced to resolve it because congressional intent on the retroactivity of the statute at issue was clear. 494 U.S. at 837, 110 S.Ct. at 1577. As indicated above, the Second

Circuit has yet to address the issue of which line of cases should govern the retroactivity issue.[10]

The "apparent tension" between *Bowen* and *Bradley,* however, may be reconciled by reference to a related Supreme Court case, *Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985).[11] In *Bennett,* a case involving the misuse of certain federal fund grants, the Supreme Court refused to apply a statute retroactively because "substantive rights" were involved. 470 U.S. at 639, 105 S.Ct. at 1560. In distinguishing *Bennett* from *Bradley,* the Court noted that the rule in *Bradley* was limited by "another venerable rule of statutory interpretation, i.e., that statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *Id.*

Thus, the crucial question for the Court is whether or not the 1991 Act's changes, namely, the amendment of Section 1981, availability of compensatory and punitive damages in a Title VII action, and the right to a jury trial, are substantive or simply procedural. If they are deemed substantive changes, application of the statute retroactively might be considered improper even under *Bradley* as a "manifest injustice." *See Stout v. International Business Machines Corp.,* 798 F.Supp. at 1006 (citing *Jackson v. Bankers Trust Co.,* 1992 WL 111105, at *6, 1992 U.S.Dist.LEXIS 6290, at *16–19).

With respect to Section 101 of the Act, which overruled the *Patterson* decision, the Court finds that it clearly "affects substantive antecedent rights." *See Johnson v. Uncle Ben's, Inc.,* 965 F.2d at 1374. As

10. Although the Second Circuit has not yet addressed itself to the *Bradley/Bowen* conflict, it has had occasion to discuss both lines of cases. As one district court noted, Second Circuit opinions subsequent to *Bowen* have referred to both the *Bradley* and *Bowen* rules. In *Lehman v. Burnley,* 866 F.2d 33, 37 (2d Cir.1989), the court relied on the rule in *Bowen* to determine the retroactivity of an administrative interpretation of the Recreational Boating Safety Act. In *Taub, Hummel & Schnall, Inc. v. Atlantic Container Line, Ltd.,* 894 F.2d 526 (2d Cir.1990), the court acknowledged the continued validity of *Bradley,* but determined that Congress intended the Shipping Act of 1984 to apply only prospectively. *See Wisdom v. Intrepid Sea–Air Museum,*

1992 WL 168224, at *4, 1992 U.S.Dist.LEXIS 9424, at *12.

11. A number of courts have relied on *Bennett* in resolving the tension between *Bowen* and *Bradley. See, e.g., Gersman v. Group Health Ass'n., Inc.,* 975 F.2d at 898–99; *Johnson v. Uncle Ben's, Inc.,* 965 F.2d at 1374; *Mozee v. American Commercial Marine Service Co.,* 963 F.2d at 936; *Hill v. New York City Bd. of Educ., Bureau of Pupil Transp.,* 808 F.Supp. at 158; *Bridges v. Eastman Kodak Co.,* 800 F.Supp. at 1177–78; *Stout v. International Business Machines Corp.,* 798 F.Supp. at 1005; *Wisdom v. Intrepid Sea–Air Museum,* 1992 WL 168224, at *5, 1992 U.S.Dist.LEXIS 9424, at *14–15.

the *Johnson* court explained, "[u]nder *Patterson*, § 1981 did not prohibit discrimination in promotions [and other aspects of post-formation contractual relations] before the enactment of § 101. Section 101 extended § 1981 to such discriminatory conduct." *Id.; see also Baynes v. AT & T Technologies, Inc.*, 976 F.2d at 1374 ("the Act also expands certain plainly substantive rights, among these the extension of rights under 42 U.S.C. § 1981"); *Gersman v. Group Health Ass'n., Inc.*, 975 F.2d at 899 (same). Accordingly, Section 101 shall not apply retroactively to conduct that occurred before its enactment, absent clear evidence to the contrary. As discussed at length, there is no such clear evidence. Thus, the Hospital's motion to dismiss Davila's Section 1981 claim for failure to state a claim is granted.[12]

Whether the availability of compensatory and punitive damages and the right to a jury trial affects substantive rights is a more difficult question. Some courts in this Circuit have concluded that these additions to the Act did not alter existing substantive rights, but rather augmented the procedures by which plaintiffs may vindicate their pre-existing substantive rights. *See Bridges v. Eastman Kodak Co.*, 800 F.Supp. at 1177; *Jackson v. Bankers Trust Co.*, 1992 WL 111105, at *5–6, 1992 U.S.Dist.LEXIS 6290, at *18–20; *Wisdom v. Intrepid Sea–Air Museum*, 1992 WL 168224, at *7, 1992 U.S.Dist.LEXIS 9424, at *14–19; *Croce v. V.I.P. Real Estate, Inc.*, 786 F.Supp. at 1148–49.

Not all courts, however, agree with this viewpoint. For example, the Seventh Circuit in *Luddington v. Indiana Bell Telephone Co.*, noted that changes in remedies, procedures, and evidence "can have as profound an impact on behavior outside the courtroom as avowedly substantive changes." *Id.* at 229. The court went on to say that:

> [t]he amount of care that individuals and firms take to avoid subjecting themselves to liability whether civil or criminal is a function of the severity of the sanction, and when the severity is increased they are entitled to an opportunity to readjust their level of care in light of the new environment created by the change. That is the philosophy ... behind the interpretive principle that presumes that a new civil statute applies only to conduct that occurs after its effective date.

*Id.* at 229.

Other courts have voiced similar positions. *See e.g., Kennedy v. Fritsch*, 796 F.Supp. 306 (N.D.Ill.1992); *Long v. Hershey Chocolate, U.S.A.*, 1992 WL 191097, at *4–5, 1992 U.S.Dist.LEXIS 6583, at *14–15 (M.D.Pa. May 1, 1992) (citing cases). In *Fritsch*, the court observed that:

> The method and extent of trial preparation is profoundly affected by the remedies and procedure applicable at the time suit is begun. The vast variation in the amount of possible recovery and the identity of the trier of fact has great effect on many trial preparation decisions. Full blown civil litigation involving both compensatory and punitive damages before a jury is far removed from

---

**12.** That the conduct for which Davila seeks to recover occurred prior to the *Patterson* decision, when many lower courts had concluded that Section 1981 applied to racial discrimination in promotions, terminations, and other aspects of contractual relations, does not warrant a different result. As the Seventh Circuit noted, the pre-*Patterson* "legal regime" was

> merely a set of lower-court decisions, constituting a stab in the dark concerning issues on which the Supreme Court had not yet ruled. It was a tentative regime, which *Patterson* swept away. And it would be a considerable paradox to hold that the older the conduct complained of, the more securely the conduct is subject to the new statute. The Civil Rights Act of 1991 would be applied to racial discrimination committed before 1989, as well as to that committed since 1991, but racial discrimination committed between 1989 and 1991 would be subject to the more liberal (from a defendant's standpoint) regime of the *Patterson* decision. A jurisprudence of effective dates for the 1991 statute would be too complex to be worth elaborating and applying, especially when we consider the added costs of litigation that would be imposed.

*Luddington v. Indiana Bell Telephone Co.*, 966 F.2d at 229; *see also Johnson v. Uncle Ben's, Inc.*, 965 F.2d at 1374 (same); *Gersman v. Group Health Ass'n., Inc.*, 975 F.2d at 899 (same); *Hill v. New York City Bd. of Educ., Bureau of Pupil Transp.*, 808 F.Supp. at 159 (same).

non-jury litigation with conciliation mechanisms and only limited equitable non-punitive relief.

*Id.* 796 F.Supp. at 312.

Moreover, in *Stout v. International Business Machines Corp.*, 798 F.Supp. at 1006–07, the court concluded that the 1991 Act's authorization of compensatory and punitive damages in Title VII actions, as well as jury trials, represents something more than merely procedural changes. This conclusion was based in part on the majority opinion in *United States v. Burke,* — U.S. ——, ——, 112 S.Ct. 1867, 1874, 119 L.Ed.2d 34 (1992), wherein the Supreme Court stated that "Congress' decision to permit jury trials and compensatory and punitive damages under the amended [1991 Civil Rights Act] signals a marked change in its conception of the injury redressable by Title VII, and cannot be imported back into analysis of the statute as it existed at the time of this lawsuit." *Id.*[13]

The *Stout* court agreed, stating that:

> the broad changes in the nature of the damages produced something more than simply a redoubled effort to deter unlawful discrimination and harassment. Significantly altering the degree and nature of the liabilities defendants are exposed to implicitly recognizes that the injuries resulting from intentional discrimination are more profound, more penetrating than originally recognized, and thus require broader remedies.
>
> By making compensable such things as pain and suffering and injuries to a person's mental health, Congress had done more than merely increase an offender's potential liability by raising the roof on monetary recovery. True it seeks to deter discriminatory conduct through greater sanctions, but in so doing, it has also shifted how it views the injuries caused by such conduct.

*Stout v. International Business Machines Corp.*, 798 F.Supp. at 1007. Thus, the

*Stout* court held that application of the 1991 Act would impact upon a defendant's substantive rights and liabilities, and it declined to apply these provisions retroactively. *See also Vogel v. Cincinnati*, 959 F.2d at 598 ("Clearly, retroactive application of the 1991 Act would affect 'substantive rights and liabilities' of the parties to this action").

The Court agrees with the view expressed in *Stout, Fritsch*, and *Luddington*, and concludes that the Act's provisions for compensatory and punitive damages, as well as the right to a jury trial, shall not be applied retroactively to the claims at issue in this action. Accordingly, the Hospital's motion to strike Davila's demand for a jury trial and compensatory and punitive damages under Title VII is granted.

As a final observation, the Court notes that the above determinations as to the retroactivity of the 1991 Act are bolstered by the Court's belief that the *Bowen* line of cases on retroactivity is the better one to follow. Prospective application of statutes best conforms to the traditional view outlined by Justice Scalia in *Kaiser* that statutes are to be applied prospectively absent specific direction to the contrary. *See Stout v. International Business Machines Corp.*, 798 F.Supp. at 1007; *Smith v. Petra Cablevision Corp.*, 793 F.Supp. at 431.

Having granted the Hospital's motion to dismiss Davila's Section 1981 claim, as well as its motion to strike Davila's demand for a jury trial and compensatory and punitive damages under Title VII, the Court turns to New York Hospital's motion to strike Davila's demand for a jury trial under the New York HRL.

## II. Availability of a Jury Trial Under the New York Human Rights Law

New York Hospital also moves to strike Davila's demand for a jury trial under the

---

**13.** Justices O'Connor and Thomas, dissenting in *Burke,* reached a contrary conclusion. Relying on Congress' statement that "additional remedies are needed to deter unlawful harassment and intentional discrimination in the workplace," Pub.L. 102–166 § 2, 105 Stat. 1071, they concluded that new remedies were added to

more effectively deter discrimination and effectuate the law's established purposes rather than to reshape Congress' conception of the injuries caused by discrimination. *Stout v. International Business Machines Corp.*, 798 F.Supp. at 1007 (citing *United States v. Burke,* — U.S. at ——, 112 S.Ct. at 1881).

New York HRL on the grounds that New York state law provides that a party waives his right to a jury trial when he requests both legal and equitable relief. *See* Amended Complaint, at 8–9.[14] Davila opposes the motion.

■ Before determining whether New York law necessitates striking Davila's demand for a jury trial, the Court must first decide whether New York law applies. It is well established that federal courts must apply state substantive law to pendent state claims. *See Colgate Palmolive Co. v. S/S Dart Canada*, 724 F.2d 313, 316 (2d Cir.1983), *cert. denied sub nom. Global Terminal & Container Services, Inc. v. Colgate Palmolive Co.*, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Federal procedural rules apply, however, where they cover the point in dispute and no conflicting state rule "would substantially affect primary decisions respecting human conduct." *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir.), *cert. dismissed*, 497 U.S. 1057, 111 S.Ct. 27, 111 L.Ed.2d 840 (1990) (quoting *Hanna v. Plumer*, 380 U.S. 460, 475, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965)). As one district court noted, "a rule governing the right to a jury determination of factual issues in cases joining equitable and legal claims is clearly intended only to regulate the internal mechanics of a litigation and will not affect

primary decisions respecting human conduct." *Resnick v. Resnick*, 763 F.Supp. 760, 766 (S.D.N.Y.1991) (citing *Rand v. Underwriters at Lloyd's, London*, 295 F.2d 342, 346 (2d Cir.1961), *cert. denied*, 368 U.S. 988, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962)). The Court agrees with that assessment and, therefore, finds it appropriate to apply federal rules regarding the right to a jury trial to the pendent state claims in this case.[15]

■ Although New York state courts have held that a party waives his right to a jury trial when he joins equitable and legal causes of action, *see Resnick v. Resnick*, 763 F.Supp. at 766 (citing *Zimmer–Masiello, Inc. v. Zimmer, Inc.*, 164 A.D.2d 845, 559 N.Y.S.2d 888, 889 (1990); *Kaplan v. Long Island University*, 116 A.D.2d 508, 497 N.Y.S.2d 378, 379 (1986)), when a federal court is presented with a case involving both legal and equitable claims for relief that have common issues of fact, and a jury trial has been properly demanded with respect to the legal claims, the party making the demand has a right to have the legal claims tried to a jury. *Resnick v. Resnick*, 763 F.Supp. at 766 (citations omitted). In order to ensure that this right is preserved, the legal claims are normally tried to the jury before the court hears the equitable claims. *Id.* at 767 (citations omitted).

Accordingly, Davila is entitled to a jury trial on those state claims seeking legal

---

**14.** It is undisputed that Davila seeks both legal and equitable relief: Specifically, in his prayer for relief, Davila requests that the Court enter a judgment: (a) adjudicating and declaring acts of defendant as unlawful discrimination against plaintiff because of his national origin, in violation of 42 U.S.C. § 1981, Title VII, and New York State Executive Law § 296; (b) enjoining defendant from engaging in further acts of unlawful discrimination; (c) enjoining defendant from maintaining or disseminating any information adverse to complainant; (d) directing defendant to develop within 90 days of entry of judgment, an effective mechanism for the prevention and detection of discriminatory practices at defendant's facilities; (e) directing defendant to offer plaintiff the next available equivalent position with credit for seniority from the date of his forced resignation; (f) awarding plaintiff compensatory damages, including damages for lost back pay, out-of-pocket expenses

incurred, and for mental and emotional distress; (g) awarding plaintiff punitive damages; (h) awarding plaintiff the costs of this action, including attorneys' fees; (i) granting such other relief as this Court deems just, proper, and equitable.

**15.** This determination does not undermine the Court's conclusion that the 1991 Act's addition of compensatory and punitive damages, as well as the right to a jury trial, altered existing substantive rights, and thus necessitated prospective application only. Because of the inherent unfairness of applying statutory changes retroactively, a more stringent analyses is necessary when determining whether changes to an existing statute impact upon a defendant's substantive rights for purposes of retroactivity, than when determining whether a rule is substantive or procedural for choice of law purposes.

988

relief, and the Hospital's motion to strike Davila's demand for a jury trial under the New York HRL is denied.

## CONCLUSION

For the reasons set forth above, the Hospital's motion to strike Davila's demand for a jury trial and compensatory and punitive damages under Title VII is granted. The Hospital's motion to dismiss Davila's Section 1981 claim for failure to state a claim is granted. The Hospital's motion to strike Davila's demand for punitive damages under the New York HRL is granted. The Hospital's motion to strike Davila's demand for a jury trial under the New York HRL is denied.

SO ORDERED.